## UNITED SHOE STORES CO., Inc., v. BURT et al.
### No. 4146.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

Lyons & Prentiss, of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellees.

STEPHENS, J.

On April 27, 1927, the plaintiff, which was conducting a shoe store in the Regent building on Texas street in the city of Shreveport, La., leased a portion of its balcony or mezzanine floor of said building to the defendants for the purpose of operating a manicuring, beauty, and hair cutting shop. The term of the lease was three years and five months, beginning October 1, 1927, and ending March 1, 1931. The consideration to be paid for the lease was $6,150, payable in 41 installments of $150 each, per month, in advance, on the 1st day of each month, beginning October 1, 1927.

The lease contract contained the following pertinent provisions:

"The lessor agrees to furnish * * * elevator service, both freight and passenger, for the premises hereby leased to the lessees, in the proper manner for the conducting of the business of the said lessees."

"The time for opening and closing the business carried on as herein contemplated shall be controlled by the rules and regulations of the lessor, and the giving out and control of the keys shall be governed by the lessor."

Shortly after the contract was executed, the defendants were furnished a key to the front door of the shoe store, which enabled them to open and close their shop at their own convenience, and without regard to the closing and opening hours of the lessor's business.

In September, 1929, the lessor, at the request of the lessees, and upon their representation that business was very quiet, reduced the monthly payments of rental from $150 to $125. The elevator service furnished by the plaintiff was satisfactory to the defendants, and the relationship between the parties was harmonious until the latter part of August, 1930, at which time the plaintiff's tenants occupying the second and third floors of the building moved out. When this occurred, there no longer existed any necessity for ele-

vator service in the building except from the main floor, occupied by the plaintiff's shoe store, to the mezzanine floor occupied by the defendants' beauty shop. The plaintiff conceived the idea that it would discontinue the elevator service or restore the rental to $150 per month. The plaintiff notified the defendants to that effect on or about August 27, 1930, and on September 2d actually stopped the elevator service, notwithstanding the verbal protest of the defendants.

On September 6th following, the defendants tendered the plaintiff a check for $125 for rent for that month, and notified its president that the discontinuance of the elevator service automatically cancelled the lease contract; and that they would vacate the premises on or before October 1, 1930. Whereupon the plaintiff immediately refused to accept the check; restored the elevator service; and demanded the key above referred to, which had been furnished the defendants for their convenience. The defendants surrendered the key, in so far as the record shows, without complaint at the time.

This suit was instituted on September 16, 1930, for the purpose of obtaining judgment at the rate of $150 per month, beginning with the month of September, 1930, for the unexpired term of the lease, and further for the sum of $25 unpaid rent for the month of February, 1930, and $25 unpaid rent for the month of March, 1930.

The defendants answered, admitting that a balance of $25 was due for rent for the month of February, 1930, and a like amount for rent for the month of March, 1930; and that they owed the plaintiff $125 for rent for the month of September, 1930. They alleged that they had made a legal tender of this amount ($175) admitted to be due, on September 6, 1930, and that the tender was refused.

They further averred in their answer that the discontinuance of the elevator service canceled and terminated the lease contract; and that the plaintiff demanded and secured the return of the key to the building without cause or reason therefor.

They prayed for a judgment rejecting plaintiff's demands, except as to the sum admitted to be due; annulling and cancelling the lease contract; and in reconvention for the sum of $150 for damages alleged to have been sustained due to decreased volume of business while the elevator service was discontinued. They further prayed for trial by jury, which was granted, and had. The verdict, which was made the judgment of the court, rejected plaintiff's demands and awarded the defendants damages as prayed for. The plaintiff appealed.

The discontinuance of the elevator service was unquestionably a breach of the lease contract. The immediate solution of the problem as to whether that breach operated a cancel-

lation of the contract, as contended for by the defendants, may be found in the answer to the question: Was the breach active or passive? If active, the lease contract should be annulled. If passive, the lease contract remains enforceable, and the defendants have suffered no injury, in our opinion, for which they may recover.

■ A contract is actively breached if a party commits some act which is inconsistent with the obligation therein assumed. It is passive if a party omits to do an act which he had bound himself to do, or fails to do the act at the time or in the manner agreed upon. If the breach is active, damages are due immediately, and without obligation on the part of the creditor to put the debtor in default; but, if the breach be passive, damages are due only from the time the debtor has been put in default, either by demand for compliance, in writing, or by commencement of a suit (the methods of putting in default which are pertinent here). Civil Code, articles 1931, 1932, 1933, 1911.

 The obligation on the part of the plaintiff to furnish elevator service was a continuous one, which existed throughout the term of the lease. This obligation was faithfully and satisfactorily performed from October 1, 1927, until September 2, 1930, on which latter date the service was discontinued. Clearly, the omission to continue the service was a passive breach of plaintiff's obligation, and it was the duty of the defendants, if they intended to hold the plaintiff for damages for violating the contract, to immediately pay their rent which was due on September 1st, and put the plaintiff in default by written demand. Provided the defendants were in a position to perform by paying their rent on September 2d, the plaintiff could have been put in default within ten minutes from the time the breach of the contract occurred. But the defendants delayed action until September 6th, on which date they tendered the September rent, and notified the plaintiff in writing that the stopping of the elevator service had canceled the lease. As the elevator service was immediately thereafter restored, it appears that the defendants were more interested in the termination of the lease contract than that its terms be observed or that its existence be continued.

The defendants contend that the failure of the plaintiff to furnish elevator service from September 2 to September 6, 1930, was an active breach of the lease contract, in that it was a constructive eviction, rendering the premises unsuitable for the purpose for which they were leased.

If it was true that some act on the part of plaintiff rendered the premises unsuitable for the purpose for which leased, we would agree with the defendants that the act would constitute an active breach of the contract. But

**372**

here the plaintiff omitted to do an act which rendered the premises merely more inconvenient for the use for which they were intended. The leased premises were only nine feet above the ground floor of the building, and were accessible by stairs.

The defendants cite no Louisiana authorities which, in our opinion, support their position. A number of cases from other states are cited. Of these, McCall v. New York Life Insurance Co., 201 Mass. 223, 87 N. E. 582, 21 L. R. A. (N. S.) 38, is particularly relied on and is illustrative of the others. The sole question in the McCall Case was whether the failure of the lessor (after repeated demand for better elevator service, and complaint that it had not been received) to furnish reasonable access to the leased premises on the fourth floor of a building amounted to a constructive eviction. It was held that the elevator was so defective and its operation so uncertain that the lessee did not have the beneficial use of the premises, and was therefore constructively evicted; and that, after actual abandonment by the lessee, the constructive eviction was a complete defense to an action for rent. There was no question in the case of damages or whether the breach was active or passive; but it was made clear that demand was made by the lessee repeatedly for adequate elevator service without avail.

In the instant case the discontinuance of the elevator service was not a constructive eviction, as the premises remained reasonably accessible; but, of course, after demand in writing, if the service had not been restored, an action would lie against the plaintiff for damages. But in the instant case, unlike the cited case, no demand was ever made that the elevator service be restored; but, on the contrary, the defendants clearly indicated that they did not desire elevator service, but that they did desire to vacate the premises. The notice referred to, dated September 6, 1930, reads as follows:

"This is to notify you that I am vacating the premises on or before October 1st, 1930.

"Closing down the passenger elevator automatically cancelled our lease contract."

■ Lease contracts do not lend themselves so readily to "automatic" cancellation, and are not lightly set aside by the courts.

"Agreements legally entered into have the effect of laws on those who have formed them. They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith." Article 1901, Civil Code.

The defendants contend that, because the plaintiff permitted them to have a key to the building from the time the contract was entered into until they announced that it was automatically canceled, the condition that the plaintiff should control the key was modified and waived. It might be contended with equal force that by surrendering the key the defendants waived the right to assert the position they now assume. But the question is of no importance, as no damages are sought or alleged to have occurred as a result of the demand for, and surrender of, the key.

The president of the plaintiff company testified that effective September, 1929, he reduced the rent from $150 per month to $125 per month, with the understanding with the defendants that the reduction was of a temporary nature, and that the rent might be raised again at any time.

The defendant J. D. Burt, the only other witness to the transaction, testified that the rent was reduced for the remainder of the life of the lease.

■ The rent no doubt was reduced because, in the opinion of both of the parties, business conditions made the reduction necessary. The reduction, as shown by the payments, was in effect for many months, and we believe that we are justified in the conclusion that the reduced figure was to obtain at least until business conditions justified its increase, or, in other words, until the cause for the reduction ceased to exist. We take judicial notice of the fact that business conditions have not improved since September, 1929. The plaintiff should recover the reduced rent only.

■ The defendants are not entitled to recover damages for the passive breach of the lease contract, as the plaintiff was not put in default; or, if it be admitted that the notice of September 6, 1930, put the plaintiff in default, no damages were shown to have been suffered subsequent to that date.

The plaintiff is entitled to judgment for $175, which was admitted to be due, and tendered by the defendants; and for the further sum of $625 for rent for the months of October, 1930, to February, 1931, inclusive, at the rate of $125 per month.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, United Shoe Stores, Inc., and against the defendants, J. D. Burt and Mrs. A. E. Burt, in solido, in the full sum of $800, with legal interest on $175 of said amount from judicial demand, until paid; with legal interest on $125 of said amount from October 1, 1930, until paid; with legal interest on $125 of said amount from November 1, 1930, until paid; with legal interest on $125 of said amount from December 1, 1930, until paid; with legal interest on $125 of said amount from January 1, 1931, until paid; and with legal interest on $125 of said amount from February 1, 1931, until paid. It is further ordered, adjudged, and decreed that the writ of provisional seizure be maintained, and that plaintiff's lessor's lien and

 

privilege be recognized and enforced against the property seized thereunder.

It is further ordered, adjudged, and decreed that the defendants' demands in reconvention be rejected, and that said defendants pay all costs of this suit.