126 So.2d 793 (1961)
GUARISCO CONSTRUCTION COMPANY, Inc. Plaintiff and Appellee.
v.
J. B. TALLEY, Defendant and Appellant.
No. 36.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1961.
On Application for Rehearing February 21, 1961.
*794 Willis & Willis, by Earl R. Willis, St. Martinville, for defendant.
Faris, Leake & Emmett, by Camille A. Cutrone, New Orleans, for plaintiff.
Before HOOD, SAVOY and CULPEPPER, JJ.
On Application for Rehearing en Banc February 21, 1961.
CULPEPPER, Judge.
Guarisco Construction Company, Inc. brings this action against John B. Talley for the recision of a verbal contract of exchange whereby it alleges that Mr. Talley agreed to allow plaintiff to remove dirt from 3¼ acres of land in exchange for a dragline and $1,000 worth of shells. Plaintiff alleges that it delivered the dragline to Mr. Talley and stood ready to deliver the shells but that Talley actively breached his obligation under the contract by divesting himself of title to the land, thereby making it impossible for him to perform. Plaintiff seeks to recover the dragline plus a reasonable rental therefor and damages incurred by plaintiff in reliance on the contract.
The lower court refused to hold that there was a contract of exchange, giving as its reason that at the time the contract was entered into Mr. Talley owned no interest in the land. However, the lower court's judgment decreed plaintiff to be the owner of the dragline and ordered defendant to surrender it to plaintiff. From this judgment the defendant has appealed.
Plaintiff has answered the appeal asking that the judgment be amended so as to allow a reasonable rental for the dragline during the time it was in possession of the defendant plus damages incurred by reason of defendant's breach of contract.
The facts as found by the lower court and as amply supported by the record are that in the year 1952 Mr. Talley obtained a contract with the Federal Government to build a levee near Morgan City, for which he needed a large quantity of dirt. In order to obtain the necessary dirt plaintiff purchased from Morgan City Company, Inc., represented by its agent, Mr. Robert E. Brumby, for a consideration of $5,735 cash a tract of land containing 11.47 *795 acres together with a right-of-way across an adjacent tract in order to gain access to the property. Although not contained in the deed nor in any other written instrument, Mr. Talley verbally agreed with Mr. Brumby that when he had removed all of the dirt he needed to fulfill his levee contract, he would convey the property back to Morgan City Company, Inc. The deed was dated January 22, 1952 and recorded in the Conveyance Records on February 11, 1952.
When Mr. Talley completed his levee contract there were approximately 3¼ acres of the original 11.47 acre tract left unexcavated. In about September of 1955 the plaintiff corporation, which is apparently managed by Mr. Anthony Guarisco, needed dirt for certain of its construction jobs and accordingly entered into a negotiation with Mr. Talley to obtain the dirt from the 3¼ acres which remained unexcavated. There is some conflict in the testimony as to whether Mr. Talley told Mr. Guarisco that any agreement which they entered into would have to be subject to the approval of Mr. Brumby. Mr. Talley testified that he told Guarisco he owned only "an equity" in the property and it would be necessary to get a "clearance" from Mr. Brumby. Guarisco testified that he was not informed by Talley that it would be necessary to have Brumby's approval or consent. Mr. Brumby testified that during the period of negotiation between Guarisco and Talley he told Mr. Guarisco that Talley "did not have all the rights that he seemed to have to the property" and warned him not to deal with Mr. Talley without discussing the matter with Brumby.
Regardless of the above conflict in the testimony there is no dispute that finally Mr. Talley agreed to allow plaintiff to remove the dirt from the unexcavated 3¼ acres in exchange for the dragline and $1,000 worth of shells. On December 5, 1955 plaintiff turned over the dragline to Mr. Talley. Upon learning of this agreement Mr. Brumby became alarmed and requested that Mr. Talley honor his verbal agreement to convey the property back to the Morgan City Company, Inc. which Mr. Talley did by deed dated December 12, 1955 and recorded on the same date in the conveyance records of St. Martin Parish. Mr. Brumby testified that at the time this deed was signed he discussed with Talley the agreement which Talley had made with Guarisco and since they were both his close friends he concluded that the equitable thing to do would be to allow Mr. Guarisco sufficient time to remove from the pit an amount of dirt approximately equal to the value of the dragline which he understood to be $2,750. As was found by the trial judge, the evidence does not show that Mr. Guarisco was ever informed by Talley or Brumby that his excavation of the property could or would be so limited by Mr. Brumby.
Soon thereafter Mr. Guarisco prepared the property for his use by building a shell road and clearing the area and also agreed to pay $2,000 to Mr. William J. Cotten for a right of passage over adjacent lands. Guarisco expected to remove approximately 100,000 yards of dirt from the pit over a period of about four (4) years.
In May of 1956 Mr. Brumby wrote a letter to Mr. Guarisco requesting that he cease removing dirt from the property. Brumby testified that he felt the five months which he had allowed was sufficient time for Guarisco to remove dirt equal to the value of the dragline. Actually, Mr. Guarisco had only removed about 75 truck loads of dirt valued at approximately $350. On receipt of Brumby's letter Mr. Guarisco protested to both Talley and Brumby and there is evidence in the record to indicate he was led to believe, at least by Mr. Talley, that some arrangement would be made whereby Guarisco could remove the rest of his dirt.
Under the above facts the lower court concluded that at the time Talley and Guarisco entered into their agreement Mr. Talley owned no right or interest in the *796 property because of his verbal agreement to reconvey the property back to the Morgan City Company, Inc. The trial judge held that therefore there was no binding contract between Talley and Guarisco. Although we agree with the trial court's finding of fact, we do not agree with its conclusion of law. The evidence is clear that at the time Talley and Guarisco entered into their contract, Mr. Talley was the record owner of the property in question. His verbal agreement to reconvey the property back to Morgan City Company, Inc. was clearly not legally binding as Mr. Brumby readily admitted from the witness stand during the trial of this case. We therefore conclude that as a matter of fact and of law Talley did own the property at the time he entered into the agreement of exchange with Guarisco and that this agreement was a valid contract of exchange.
It is our opinion that Mr. Talley actively breached his contract with Guarisco by deeding the property back to Morgan City Company, Inc. only seven days after he had received the dragline. Under the provisions of LSA-Civil Code, Article 1931 a contract is violated actively by doing something inconsistent with the obligation it has proposed. In the present case Talley contracted to lease to Guarisco the use of this 3¼ acres of land for the purpose of excavating dirt therefrom and then seven days later sold the property thereby making it impossible for Talley to fulfill his obligation. Clearly this is an active breach. See United Shoe Stores Company v. Burt, La.App., 142 So. 370.
Defendant's principal argument is that he informed plaintiff and plaintiff understood defendant owned only an "equity" in the property, which equity, regardless of its value, plaintiff agreed to accept as consideration for the contract of exchange. The first obvious fallacy in this argument is that it is unreasonable to think plaintiff would have agreed to give a valuable dragline and $1,000 worth of shells for a worthless right. Furthermore, it is unreasonable that plaintiff would have procured the $2,000 right-of-way from Cotten, cleared land and built a road if he had understood defendant might actually own no interest in the land. Most important of all is the undisputed fact that defendant, instead of owning only an equity, actually was record owner of the fee title to the land. This was the legal status, regardless of plaintiff's understanding. When defendant, under pressure from Brumby, chose to honor his verbal agreement to reconvey the property, rather than his legal contract with plaintiff, he clearly subjected himself to the legal consequences of his act.
Under the provisions of LSA-Civil Code, Article 1934 plaintiff is entitled to recover from Talley the amount of the loss which it has sustained by reason of Talley's breach of contract. The two items of damages alleged by plaintiff are a fair rental of $1,500 per month for defendant's use of the dragline during the approximately three year period of time that it has been in defendant's possession and also the sum of $2,000 as reimbursement for the right-of-way purchased by plaintiff from Mr. William J. Cotten. With regard to the rentals, it is our opinion that plaintiff has failed to prove with sufficient certainty the fair value thereof. In an effort to prove the amount of a fair rental, plaintiff called two witnesses who testified that a dragline of this type, in good working condition, would rent for anywhere from $1,000 to $1,300 per month, depending on the type of work to be done and other factors, but these witnesses admitted that it would be unreasonable to pay this much rent on a machine which was worth no more than approximately $2,000. From the evidence the trial court found that this particular dragline was worth only $2,750 at the time defendant received it and in this respect we are unable to say that the trial court was manifestly erroneous particularly in view of the evidence that this was an old machine originally purchased in 1945, that it was in poor condition when *797 defendant received it and defendant had to make extensive repairs in order to put the dragline in operating condition. Under these circumstances it is our opinion that plaintiff has failed to prove the fair rental value of the machine in this condition or actually that such a machine had any rental value.
The uncontradicted testimony of Mr. Guarisco is that in contemplation of the contract with Mr. Talley he purchased from Mr. Cotten a right-of-way for the sum of $2,000. Guarisco testified that he has already paid Mr. Cotten $1,100 by allowing him this amount of credit on the price of a Cadillac automobile sold by Guarisco to Cotten. Guarisco testified he still owes Mr. Cotten $900. Clearly plaintiff is entitled to recover his out of pocket expense of $1,100. However since the right-of-way agreement was not reduced to writing Mr. Cotten cannot enforce payment of the remaining $900 nor is plaintiff legally obligated to pay it. Under the provisions of LSA-Civil Code, Article 2440 all sales of immovable property, including conventional servitudes on land, must be in writing. We therefore hold that plaintiff is not entitled to recover from defendant as damages the $900 not paid to Cotten.
The sole relief granted by the lower court was the return of the dragline to plaintiff. For the reasons hereinabove set forth the judgment of the lower court is amended by adding thereto judgment in favor of plaintiff and against the defendant for the sum of $1,100 together with legal interest from date of judicial demand until paid. In all other respects the judgment of the lower court is affirmed. All costs of this appeal are assessed against the defendant.
Amended and affirmed.

On Application for Rehearing.
PER CURIAM.
The application for re-hearing submitted by the defendant-appellant was not timely filed, and we therefore cannot consider it.
Under Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1960), 8 LSA-R.S., applications for rehearing "must be filed * * * on or before the fourteenth calendar day" after (but not including) the date of delivery to counsel by deposit in the United States mail. The judgment herein was rendered on January 30, 1961, and notice under this rule was given the same day by deposit of a copy of it addressed by certified mail to counsel. Counsel for the defendant-appellant mailed from St. Martinville on February 13th his application for rehearing addressed to this court in Lake Charles. Although there is normally a one-day mail service between these two cities, due to postal delay this application was not received by us until February 15th, which was not timely as not "filed", i. e., physically delivered into the actual custody of this court, within the delay period, even though mailed before the delay had expired. McGee v. Southern Farm Bureau Cas. Ins. Co., La.App., 3 Cir., 125 So.2d 787, 790.
In suggesting that the application for rehearing was nevertheless filed timely, counsel for appellant argues that the delay within which to apply for a rehearing did not commence to run until January 31st, the date of his recipt of the court judgment, as evidenced by the postal return card. Fourteen days from this date would be February 14, which was a legal holiday in St. Martinville,[1] the place from which *798 the application was sent, so that the final day within which the application for rehearing was required to be filed was on the following day,[2] February 15th, the date on which it was actually received by this court.
Prior to a 1958 amendment, Article VII, Section 24 of the Constitution LSA was held to provide that the delay for filing an application for rehearing did not begin to run until notice of judgment was received by counsel. Mid-State Tile Company v. Chaudoir, 228 La. 634, 83 So.2d 654; Lacaze v. Hardee, 199 La. 566, 6 So.2d 663; Newsom v. Caldwell & McCann, La.App., 1 Cir., 51 So.2d 393. However, the amendment by Act 561 of 1958 deleted the provision that "No delay shall run until such notice shall have been given" upon which the holdings in these decisions are based. It is now provided by LSA-R.S. 13:4446, B, as amended by Act 38 of 1960, that, "Applications for rehearing in the courts of appeal must be filed on or before the fourteenth calendar day after notice of judgment has been given, as required by Article VII, Section 24, of the constitution." Following the 1958 amendment, the sole requirement of this constitutional article pertaining to the question is that "Notice of all judgments shall be given to counsel of record; and the court shall provide by rule for the giving of such notices." Pursuant to this constitutional authority Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1960), now provides, as earlier stated, that applications for rehearing "must be filed in quintuple copies on or before the fourteenth calendar day after such delivery [to counsel of notice of judgment] * * * by deposit in the U. S. Mail." (Italics ours.)
On the basis of the above authorities, even assuming, although not deciding, that February 14th was a legal holiday, as applicant contends, we nevertheless find that the delay within which to apply for a rehearing commenced to run on the date the judgment of this court was deposited in the certified mail and not on the date it was received by him, and therefore the judgment of this court became executory since no application for rehearing had been filed on or before February 13th.
For the above reasons the application for rehearing filed herein on February 15, was not timely filed and will not be considered.
NOTES
[1] LSA-R.S. 1:55, subd. A(3) "In the parishes of * * *, and in all municipalities, Mardi Gras shall be a holiday when the governing authorities so declare by ordinance." However, it should be added that Mardi Gras was not a legal holiday in Lake Charles, the domicile of this court, as verified by a check with the Clerk of the Lake Charles municipal council and the Calcasieu Parish Clerk of Court. The offices of the Clerk of this court were also open on that day.
[2] See LSA-R.S. 13:4446, subd. C, providing that if the last day for applying for a rehearing in an appellate court falls on a legal holiday or half-holiday, then "the delay shall be extended through the next day which is not a legal holiday."