137 So.2d 700 (1962)
INTERSTATE OIL PIPE LINE COMPANY, Plaintiff-Appellee,
v.
Ernest H. FRIEDMAN et al., Defendant-Appellant.
No. 468.
Court of Appeal of Louisiana, Third Circuit.
January 29, 1962.
Application for Rehearing Not Considered February 21, 1962.
*701 Levy & Burleigh, by John B. Levy, Lafayette, for defendants-appellants.
Landry, Watkins, Cousin & Bonin, by Jack J. Cousin, New Iberia, and Cook, Clark, Egan, Yancey & King, by Clarence L. Yancey, Shreveport, for plaintiff-appellee.
Before TATE, FRUGÉ, and HOOD, JJ.
FRUGÉ, Judge.
This is an expropriation suit brought by plaintiff-appellee, Interstate Oil Pipe Line Company, against the defendants-appellants, Ernest H. Friedman and Lydia Guidry Friedman, for the purpose of obtaining a right-of-way or servitude across a 13.15-acre tract for the construction of a pipeline aross a portion of defendants' property. Judgment was rendered by the trial court granting the right-of-way sought by plaintiff and awarding defendants $36.00 as compensation for the servitude plus $7.50 for damages to defendants' crop upon which the right of way servitude was granted; no severance damage was awarded. Defendants have appealed from this judgment.
The land involved in the expropriation proceeding is a 13.15-acre tract situated in the Fifth Ward of St. Martin Parish, in Section 66, Township 8 South, Range 6 East. Plaintiff seeks a 30-foot right-of-way across 8.57 rods (141.43) feet of defendants' property, or an area consisting of approximately .0974 acres.
It appears from the record that plaintiff and defendants were unable to agree upon a price to be paid for the right-of-way or the damages, and on May 8, 1961, plaintiff filed expropriation proceedings against defendants. In its petition, plaintiff alleged, inter alia: that it was engaged in laying and constructing a four-inch pipeline to transport petroleum produced in the Cecelia (Louisiana) Field to the terminal facilities of the Esso Standard Division of Humble Oil and Refining Company at Anchorage, Louisiana; that in order to lay said pipeline it must traverse property belonging to the defendants; that in the public interest it was necessary that petitioner have a 30-foot right-of-way across defendants' property; that petitioner and defendants were unable to agree upon a price for the purchase of said right-of way; and that it was necessary for the petitioner to file this proceeding for expropriation of the desired right-of-way.
Defendants filed an answer on May 24, 1961, denying plaintiff's allegations categorically and further alleging specifically, inter alia: that the expropriation of their property was not for public necessity or utility; that the proceeding for expropriation of their property was premature because petitioner had not attempted to negotiate with defendants prior to instituting proceedings; and that should the desired expropriation be granted then defendants are entitled to recover compensation therefor. In addition to their answer, defendants filed on May 29, 1961, exceptions of no cause of action and prematurity. On June 7, 1961, this matter *702 was taken up for trial on the merits at which time the Court overruled defendants' exceptions, and on the merits ruled in favor of plaintiff, granting said right-of-way to plaintiffs and awarding defendants the amounts hereinabove mentioned.
We believe that the trial court correctly overruled the exceptions that were filed. The record shows that plaintiff had made an attempt to negotiate, but plaintiff and defendants were unable to agree as to price; also, the exception of prematurity was not timely filed. The jurisprudence is that failure to negotiate is a special defense which must be raised by a plea of prematurity filed in limine and within ten days after service, and failure to properly and timely plead such defense constitutes a waiver thereof. Calcasieu & Southern Ry. Co. v. Witte, 224 La. 1091, 71 So.2d 858; Louisiana Power & Light Company v. Dileo, La.App., 79 So.2d, 150; Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., La.App., 131 So.2d 369.
As early as 1905, our Supreme Court, in the case of Louisiana Ry. & Nav. Co. v. Xavier Realty, 115 La. 328, 39 So. 1, stated:
"That the contingency to warrant expropriation must be evident and imperious, as the law decrees property too sacred and inviolable to sanction the expropriation of it, except it be necessary for public purposes. [Citations omitted.] That the property of no man can be taken without his consent, beyond what is admitted by the public necessity. [Citations omitted.] * * *"
Merely because a pipeline company files an expropriation proceeding does not necessarily mean that it has an absolute right to expropriate, nor can it dispense with proving the necessity for the expropriation action. After reading the record we believe that the plaintiff-appellee has a right to expropriate and has adequately proved public necessity for the expropriation of defendants-appellants' property which is demanded by the Constitution, laws and jurisprudence of Louisiana, particularly the following pertinent statutes:
LSA-R.S. 45:254, which provides as follows:
"All persons included in the definition of common carrier pipe lines as set forth in R.S. 45:251 have the right of expropriation with authority to expropriate private property under the state expropriation laws for use in its common carrier pipe line business, and have the right to lay, maintain and operate pipe lines, together with telegraph and telephone lines necessary and incident to the operation of these pipe lines, over private property thus expropriated * * *."
LSA-R.S. 45:251 defines common carrier pipe lines as follows:
"`Common carrier' includes all persons engaged in the transportation of petroleum as public utilities and common carriers for hire; * * *."
LSA-R.S. 45:252 further provides that:
"All pipe lines through which petroleum is conveyed from one point in this state to another point in the state are declared to be common carriers as defined in R.S. 45:251 * * *."
Although it is our opinion that the trial court's award of $7.50 for crop damages is rather conservative, we will not disturb it. As to the award of $36.00 for the area covered by the servitude, we feel that this amount is inadequate. The testimony of plaintiff's witnesses and defendants' witnesses varied a great deal in regard to the approximate value of the property being expropriated. Both sides tried to substantiate their valuation by producing "comparable" sales in the area or offers to buy "comparable" property; some sales ranged from as low as $200.00 per acre to as high as $2,000.00 per acre. *703 However, both of plaintiff's expert witnesses testified that the market value of the property being expropriated was approximately $350.00 per acre (Tr. 53 and 109); defendants' expert witness testified that the market value of defendants' property was between $500.00 and $600.00 per acre. Plaintiff's agent, Mr. Stuart, testified that he offered defendants a payment of $36.00 for this right-of-way, based upon a price of $4.00 per lineal rod, or approximately $352.00 per acre (Tr. 159-162), with the provision that an additional sum would be paid for the damage arising out of the construction of the pipe line on said right-of-way (Tr. 159). It appears that this was the basis of the trial court's award. Plaintiff's petition alleged that defendants demanded $16.00 per rod for the proposed right-of-way (Tr. 4). In State v. Hedwig, Inc., La.App., 133 So.2d 180, the court stated:
"Fundamental to the concept of value is the theory of highest and best use, i. e., the use which, at the time of the taking, is most likely to produce the greatest net return." (Emphasis added.)
After reviewing all of the testimony, we are of the opinion that a right-of-way over defendants' land was worth at least $6.00 per lineal rod or approximately $528.00 per acre, and the award of $36.00 for the right-of-way or servitude was inadequate and should be increased to $51.42.
Plaintiff contended that no severance damages should be awarded in the instant case; the trial court did not award any. While damages resulting from inconvenience, discomfort or loss of business are sometimes damnum absque injuria and not compensable in eminent domain proceedings, such damages, however, are compensable and recoverable to the extent that they actually decrease or diminish the market value of the owner's remaining property. Under Article I, Section 2 of our Constitution, L.S.A., it is provided:
"* * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Emphasis added.)
LSA-Civil Code, Article 497 provides:
"No one can be deprived of his property unless for some purpose of public utility, and on consideration of an equitable and previous indemnity and in a manner previously prescribed by law.
"By an equitable indemnity, in this case, is understood not only a payment for value of the thing of which the owner is deprived, but a remuneration for the damages which may be caused thereby." (Emphasis added.)
It is settled jurisprudence of this state that in an expropriation proceeding the landowner, in addition to the compensation for the property taken, is also entitled to compensation for damages to remaining property caused by the use to which the property has been put. Such damages are known and referred to as consequential or severance damage.
In Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260, our Louisiana Supreme Court stated:
"It must be borne in mind that we are not here dealing with a right of way for a road or highway or a cable buried below plow depth, but are dealing with a right of way for a 16-inch high pressure pipeline transporting high octane gasoline. This pipeline is potentially dangerous. Leaks are expected to occur in the line from time to time, and when leaks do occur explosions may result. The record shows that the pipe extending across these two tracts, for instance, will hold approximately 48,000 gallons of high octane gasoline, and that it would be dangerous to locate any structure or industry over the line or *704 in its immediate vicinity. For these reasons we are convinced that defendants have suffered damages to their remaining property because of the expropriation.
"In Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636, 638, plaintiff (apparently the same company as the plaintiff in the instant case) expropriated a right of way for the construction of a high pressure eight-inch gasoline pipeline buried 18 inches below the surface. In that case the court found that, although there was not much actual danger that a leak would occur in the pipeline, the mere fact that the high pressure pipeline was there had the psychological effect of deterring prospective purchasers of the adjacent land and of impairing the commercial value of the property adjoining the right of way. In affirming a judgment of the lower court awarding severance damages to defendant in that suit this court said:
"`The argument for the plaintiff that there is no real danger or reason for such fear has no force against the fact that the fear exists and is unavoidable. The fear of danger in some cases is as bad as the danger itselfit is a conditionnot a theory.'"
In Texas Pipeline Company v. National Gasoline Co., 203 La. 787, 14 So.2d 636, our Supreme Court in awarding severance damages for a tract of land that was an open hay meadow stated:
"The pipe line consists of an 8-inch pipe buried 18 inches below the surface, and is referred to as a high-pressure gasoline line, the pressure to be maintained in the pipe being approximately 750 pounds to the square inch. The testimony indicates that there is not much danger of a leak occurring in the pipe line. But the testimony leaves no doubt that the mere fact that the high pressure pipe line is there has the psychological effect of deterring prospective purchasers of the land, and of impairing thus the commercial value of the land adjoining the right-of-way. * * *"
In State v. Williams, La.App., 131 So.2d 600, the court stated:
"An award in expropriation proceedings should take into consideration `all factors which lead to a replacement of the loss caused by the taking and should place the owner `in as good a position pecuniarily as he would have been had his property not been taken.' State through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21. `As long as the acquisition adversely affects the market value of the remaining property, any type of injury would seem to be recoverable as severance damages.' Comment, `ExpropriationConsequential Damages under the Constitution,' 19 La. L.Rev. 491, 495-496 (1959)."
In Tennessee Gas Transmission Company v. Primeaux, La.App., 100 So.2d 917, the court felt that the burden of proving severance damages had been adequately borne by the defendant's two expert witnesses, in spite of the fact that the experts called by plaintiff testified that there would be no consequential or severance damages. Furthermore, the court apparently accepted one of the expert's opinion that generally there is always some severance or consequential damage caused to property simply by the mere presence of a pipeline.
In the Primeaux case, supra, the only question involved was the quantum of severance damage. The damage award was arrived at by setting a five percent depreciation on the entire 80-acre tract being expropriated (which was valued at $200.00 per acre), less and except the severance damage upon the 3.229 acres which, according to stipulation, embraced the actual *705 area directly affected by and subject to the servitude or right-of-way.
In the instant case the two witnesses called by plaintiff testified that the presence of the proposed pipeline would not cause any consequential or severance damage to the remaining portion of defendants' property (Tr. 66 & 117); whereas, the two witnesses called by defendants testified that between 12% and 20% Damage would be caused to the remaining portion of defendants' property (Tr. 140 & 145). We believe that there is sufficient evidence in the record to support the setting of a five percent rate of depreciation on the 13.5-acre tract, less the .0974 acres actually expropriated. We have found the 13.5-acre tract to be worth $528.00 per acre, and since 13.4026 acres (13.15 acres less the .0974 acres actually expropriated) are affected, we believe that plaintiff is entitled to recover an award of $353.82 for severance damage (5% of 13.4026 acres × $528.00 equals approximately $353.82).
For the reasons hereinabove set forth, the judgment appealed from is amended by increasing the award for the servitude or right-of-way from $36.00 to $51.42 and awarding defendants $353.82 for severance damage. Otherwise than herein amended the judgment appealed from is affirmed. All costs are assessed against plaintiff-appellee.
Amended and affirmed.

On Application for Rehearing by Plaintiff-Appellee.
En Banc.
PER CURIAM.
The opinion in this court was rendered on January 29, 1962 and deposited in the United States mail the same day.
An application for rehearing by the plaintiff-appellee was mailed from New Iberia on February 12, 1962 and was received by and filed in this court on February 13, 1962.
Applications for rehearing must be filed on or before the fourteenth calendar day after, but not including, the date of deposit in the United States mail. Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1961), 8 LSA-R.S. See: Genovese v. Abernathy, La.App. 3 Cir., 135 So.2d 802; American Bank & Trust Company v. Phillips, La.App. 3 Cir., 130 So.2d 753; Harper v. Borden Company, La.App. 3 Cir., 129 So. 2d 330, 337; Bailey v. Haymon, La.App. 3 Cir., 129 So.2d 203, 205. The delay for filing the application for rehearing, however, commences on the date of mailing by the Court and not of receipt by counsel, this being one of the more noteworthy changes in appellate practice resulting from the adoption of the Uniform Rules of the Courts of Appeal and from the revision of Article VII, Section 24, LSA-Constitution, in connection with the constitutional reorganization of the Louisiana Appellate Courts. See: Robertson v. Great American Indemnity Company, La.App. 3 Cir., 136 So.2d 550; "Proceedings in appellate courts", 35 Tulane Law Review 585 (1961). For purposes of considering the timeliness of the application for rehearing, however, the date of filing is the date that such applications are physically delivered into actual custody of this court, not the date of mailing. Guarisco Construction Company v. Talley, La.App. 3 Cir., 126 So.2d 793, 797; McGee v. Southern Farm Bureau Cas. Ins. Co., La. App. 3 Cir., 125 So.2d 787, 790, certiorari denied.
Our opinion was deposited in the mail on January 29th, 1962, and the fourteenth calendar day thereafter was February 12th, 1962. Thus, the application for rehearing was required to be filed in this court no later than February 12, 1962; so that its filing on February 13, one day later, is not timely.
The last day of the delay within which the application for rehearing was *706 required to be filed fell on February 12th, which, as Lincoln's Birthday, is recognized as a legal holiday in many states of the Union. If it were so recognized in this state, then the delay for filing the rehearing is extended through the next day which is not a legal holiday. LSA-R.S. 13:4446, subd. C. However, February 12th is not recognized as a legal holiday in Louisiana, LSA-R.S. 1:55, and thus the delay was not extended through the following day.
For the foregoing reasons, the instant application for rehearing cannot be considered by this court.
Application of plaintiff-appellee not considered.