161 So.2d 445 (1964)
Athanese J. JONES et al.
v.
INDIANA LUMBERMEN'S MUTUAL INSURANCE COMPANY et al.
No. 1245.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
Rehearing Denied March 2, 1964.
Writ Refused April 17, 1964.
*446 A. J. Marciante and Joseph Fiasconaro, Jr., New Orleans, for plaintiffs-appellees.
Sessions, Fishman, Rosenson & Snellings, James C. Murphy, Jr., New Orleans, for defendant-appellant.
Before McBRIDE, REGAN and HALL, JJ.
HALL, Judge.
On August 22, 1960 between 1:30 and 2:00 A.M. an automobile belonging to the co-plaintiff, Athanese Jones, which was then legally parked on the street in front of her residence was struck from the rear and completely demolished by an automobile owned by Leo V. Tervalon and driven by Michael A. Martin, Jr. Athanese Jones and her subrogated collision insurer brought suit for property damage against several defendants but prior to trial on the merits voluntarily dismissed the suit as to all defendants except Indiana Lumbermen's Mutual Insurance Company.
After trial on the merits judgment was rendered in favor of Athanese Jones for $50.00 and in favor of her subrogated collision insurer for $1,606.50, the amount of damage being stipulated between the parties. The defendant, Indiana Lumbermen's Mutual Insurance Company appealed.
Appellant concedes negligence on the part of Martin who was driving the Tervalon automobile but denies coverage under the terms of its policy.
None of the facts are in dispute. The automobile which did the damage was owned by Leo V. Tervalon, who had a minor step-son named Willis Rudolph who resided with him. On the night of the accident Willis Rudolph, then about 17 years old, took the Tervalon automobile with his step-father's consent to visit the home of a girl friend. Later that night, at approximately 11:30 P.M. he picked up a friend, named Michael A. Martin, Jr., and went to several places in the neighborhood, one of which was a bar. After they left the bar, Martin asked Rudolph's permission to drive the automobile and Rudolph agreed. The accident occurred while Martin was driving the Tervalon automobile.
Tervalon had no liability insurance. The policy involved in this case is one issued by the defendant, Indiana Lumbermen's Mutual Insurance Company, to a Mrs. Vivian D. Porche as the named insured, covering an automobile owned by her.
Mrs. Porche's policy contains the following provisions:
"Persons Insured. The following are insureds under Part I:
"(a) With respect to the owned automobile,
* * * * * *
"(b) With respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative, but only with respect to a private passenger automobile *447 or trailer, provided the actual use thereof is with the permission of the owner; * * *." (Emphasis supplied)
Under the definitions in the policy we find the pertinent words defined as follows:
"`non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;
* * * * * *
"`relative' means a relative of the named insured who is a resident of the same household;

* * * * * *"
With respect to Mrs. Porche's policy the Tervalon automobile which did the damage was a "non-owned automobile", and Michael A. Martin, Jr., the driver of the Tervalon automobile at the time of the accident, was Mrs. Porche's son, residing with her at the time, and therefore a "relative" within the meaning of the policy.
The sole issue to be decided is whether Martin was driving the Tervalon automobile "with the permission of the owner", Leo V. Tervalon.
The evidence is clear and undisputed that Tervalon had allowed his step-son, Rudolph, to drive his car on occasion, but gave him specific instructions never to let anyone else drive it. The uncontradicted testimony also shows that Tervalon had no knowledge that Martin or anyone else except himself and his step-son had ever driven the automobile before, and that he had no knowledge or indication that Martin or anyone else except his step-son would drive his automobile that night. Moreover, the record is devoid of any testimony showing that Martin or anyone else except Tervalon and his step-son had ever driven the automobile prior to the night of the accident.
The testimony indicates that Rudolph had had two bottles of beer before he left home at about 7:30 P.M. and that he had no more alcoholic beverages after that. The testimony also shows that although he and Martin had visited a bar to see a friend neither had taken anything to drink.
It is undisputed that Martin asked Rudolph to let him drive; that Martin's desire to drive was exclusively for his own pleasure; that he was not driving on an errand for Rudolph or Tervalon or for their benefit, nor because Rudolph was ill or intoxicated or that he needed any aid whatever.
The act of Martin in driving the car was contrary to the express orders of Tervalon, the owner, and while recognizing that there may be circumstances in which such consent may be implied in spite of such prohibition, we can find no fact or circumstance in this case from which the owner's consent might be implied. See generally Coco v. State Farm Mutual Automobile Insurance Company, La.App., 136 So.2d 288; Anderson v. Adams, La.App., 148 So.2d 347; Haspel v. Treece, La.App., 150 So.2d 120.
The Trial Court found that since Martin was operating the automobile in the presence of Rudolph, permittee of the owner, "and was there in fact under the direction and control of Rudolph at the time of the accident" he was covered by the policy. Apparently the Trial Judge was influenced by certain language found in Brooks v. Delta Fire & Casualty Company, La.App., 82 So.2d 55. However, a careful reading of the Brooks case indicates that coverage was afforded the sub-permittee not because the permittee was present in the vehicle and able to exercise control of its operation but because the facts in that case indicated an implied permission on the part of the owner.
We cannot agree that the mere presence of Rudolph in the car was the equivalent of consent by the owner.
Appellee makes the point that most of the jurisprudence prior to the Anderson case (supra) has dealt with coverage under the "omnibus clause" and not with respect to *448 the "non-owned automobile clause", and argues that the prior jurisprudence is not in point and that a distinction should be made between "omnibus coverage" and "drive other car coverage" in order to afford maximum protection to the policy holder and his family.
In the Anderson case (supra) the First Circuit found "no valid reason for distinguishing between the permission required in either instance" and neither do we.
Since in the instant case Martin was not driving "with the consent of the owner" either express or implied, and since the mere presence of Rudolph in the car at the time of the accident is, in our opinion, immaterial, we must conform to the clear and unambiguous language of the policy, and hold that the policy does not afford coverage to Martin.
For the foregoing reasons the judgment appealed from is reversed and judgment is now rendered in favor of the defendant, Indiana Lumbermen's Mutual Insurance Company, and against the plaintiffs, Athanese J. Jones and Motors Insurance Corporation, and each of them, dismissing the suit of each of said plaintiffs, all costs in both courts to be borne by plaintiffs.
Judgment reversed and rendered.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiffs and appellees herein timely filed an application for rehearing which has been given due consideration by the court.
Plaintiffs and appellees on the twenty-fourth day after our opinion and decree was handed down herein filed a "Supplemental Application for Rehearing," which we are powerless to consider because it came too late.
A party must apply for a rehearing within fourteen days after the rendition of the judgment. LSA-C.C.P. art. 2166. Under our Rule XI(1), 8 LSA-R.S. applications for rehearing and briefs in support thereof must be filed on or before the fourteenth calendar day after receipt of the notice of judgment, and no extension of time therefor shall be granted. When the application for rehearing is filed without said fourteen-day time limit, the court has no authority to consider the same. Bryant v. Texas & N. O. R. Co., La.App., 20 So.2d 558; Melancon v. Texas & N. O. R. Co., La.App., 20 So.2d 559; Clark v. Delta Tank Mfg. Co., La.App., 22 So.2d 135; Antoine v. Consolidated-Vultee Aircraft Corporation, La.App., 34 So.2d 361; Appel v. Ennis, La.App., 34 So.2d 819; Polizzi v. Thibodaux, La.App., 37 So.2d 62; McGee v. Southern Farm Bureau Casualty Insurance Co., La.App., 125 So.2d 787; Guarisco Construction Company v. Talley, La.App., 126 So.2d 793; Harper v. Borden Company, La.App., 129 So.2d 330; Interstate Oil Pipe Line Company v. Friedman, La.App., 137 So.2d 700; Hulin v. Hale, La.App., 137 So.2d 709.
It would be equivalent to granting additional time for the filing of an application for a rehearing to allow a party to supplement grounds for rehearing after statutory time for applying for the rehearing had expired. Gautreaux v. Harang, 190 La. 1060, 183 So. 349; Kelly v. Ozone Tung Cooperative, 38 So.2d 232.
A rehearing herein is refused.
Rehearing refused.