SAVOY, Judge.
Plaintiff filed suit against defendant for a money judgment for an alleged breach of an oral contract entered into between the parties. After a trial on the merits, the court found that plaintiff had breached his part of the contract, but granted him a judgment for labor performed up to the date of the breach of the contract, together with all costs of court. Plaintiff has appealed to this Court from said judgment.
The district judge has rendered written reasons for judgment. We are of the opinion that he has correctly decided the case, and adopt his opinion as our own. His opinion reads as follows:
“Plaintiff seeks to recover a judgment against the defendant for the sum of Three Thousand Two Hundred Eight and 44/100 ($3,208.44) Dollars, for an alleged breach of an oral contract whereby plaintiff had agreed to build for defendant a house on the property of one Raymond Patin.
“Defendant in its answer claims substantially that plaintiff breached his contract by not proceeding to do the work he had undertaken with due diligence in spite of repeated demands that he do so by both defendant and said Raymond Patin, and by failing to do the work that he did do in accordance with the plans and specifications. Defendant further alleges that because of plaintiff’s breach of his contract, it was obliged to get someone else to build the house which had been the subject of the contract between the parties at a greater labor cost.
“The facts of the case as established by a preponderance of the evidence are substantially as follows:
“Raymond Patin contracted with defendant to build a house for him according to certain plans and specifications. The contract was made contingent upon Patin obtaining a loan commitment from a building *424 and loan association. In November, 1959, defendant entered into an oral contract with plaintiff to construct Patin’s house under the terms of which defendant was to furnish all necessary material and plaintiff all of the necessary labor, including his own labor. The price to be paid to plaintiff by defendant was a sum which would be equivalent to one and 25/100 ($1.25) Dollars, per square foot of floor space. This contract was, of course, also made contingent upon Patin obtaining a loan commitment.
“In December, 1959, Patin obtained the loan commitment for which he had applied. According to the commitment, the house to be built had to be completed on or before March 1, 1960. However, normally, a reasonable extension of time to complete construction can be obtained under extenuating circumstances.
“In the early part of January, 1961, plaintiff obtained from defendant the plans and specifications for the construction of the house he had contracted to build and material necessary for him to stake out the foundation for the house. This he did shortly thereafter. He employed two of his brothers to dig the trenches for the concrete foundation called for by the plans and specifications. Following the digging of the trenches and before concrete could be poured into the trenches, they were filled with rain water and remained in that condition for two or three weeks. Following a few days of good weather, defendant’s manager visited the site upon which Patin’s house was to be built with Patin. Since Thibodeaux had not taken any steps to remove the water from the trenches, defendant’s manager decided to have this done himself instead of waiting on plaintiff to do so in order that construction work could be resumed without any unnecessary delay. After the water was removed from the trenches, defendant’s manager traveled to St. Martinville, Louisiana, where plaintiff was working on a job by the hour, to ask him why he was not working on Patin’s house. Plaintiff’s answer was that it was too wet. The following day plaintiff came to defendant’s office in Breaux Bridge. Defendant’s manager informed him that he was canceling his contract for the construction of Patin’s house because of his failure to proceed with construction thereof according to the terms of his contract. Defendant’s manager offered to pay plaintiff for the work he had done himself and had had done by others towards the construction of Patin’s house. Plaintiff surrendered the plans and specifications which had been delivered to him to defendant’s manager.
“On the night of the same day that he surrendered the plans and specifications, plaintiff reached defendant’s manager over the telephone, apparently in an effort to reinstate his contract with defendant. Failing to succeed in this, he demanded of plaintiff’s manager the sum of Three Hundred and no/100 ($300.00) Dollars, as his contract had been in effect for approximately two weeks before it was canceled, and he and his brothers had done the work herein-above mentioned.
“Clovis Patin, a carpenter of many years experience, who actually built the house of Raymond Patin, testified that in his opinion it would take two men not more than two days to dig the trenches which had been dug at the instance of plaintiff by his two brothers, who were paid one dollar per hour for such work. He stated, however, that some men work faster than others and in any event, it should not take two men more than three days to do such work. Plaintiff testified that he had paid his two brothers each the sum of thirty dollars for the work they had done for him. Plaintiff’s testimony in this respect was not corroborated by his two brothers, as they did not remember how long they had worked or how much they had been paid. Clovis Patin also testified to the effect that the work done by plaintiff himself would normally take about three hours.
“It is defendant’s contention that when he entered into the subject contract with plaintiff, it was understood that plaintiff would complete the work he was then *425 doing near the Town of St. Martinville in about two weeks and that thereafter could and would devote his entire time in building Patin’s house. But instead of resuming the work he had undertaken to do, that is, the construction of Patin’s house as soon as he could do so, he continued to work on an hourly basis on another job. That this was a serious violation of his contract as time was of the essence of his contract; that it was contemplated and understood by all concerned that the construction of Patin’s house was to be completed as soon as possible and within the time limit specified in the loan commitment, if at all possible. Defendant also contends that the small amount of work done by plaintiff was faulty to some extent in that it was not done according to the plans and specifications and had to be corrected. Evidence was offered by defendant which bears out this contention.
“Under the provisions of [LSA-] Civil Code, Article 2765, the owner is given the right to arbitrarily cancel his building contract at any time. When he does so, he is liable for the value of the ‘expense and labor already incurred’ and for ‘such damages as the nature of the case may require’. The phrase, ‘such damages as the nature of the case may require’, has almost invariably been interpreted to include the ‘loss of profit’ because of the cancellation. However, when the owner cancels his contract for sufficient cause, Civil Code Article 2765 ceases to be the standard of the owners’ liability and the contractor may not recover for loss of profit. See Peterson v. Sutter, 4 La.App. 180.
“Under the provisions of Civil Code Article 2769, the undertaker who fails to do the work he has contracted to do or who does not execute it in the manner and at the time he has agreed to do it, is liable in damages for the losses that may ensue from his noncompliance with his contract.
“Defendant has made no claim against plaintiff for damages, although it claimed that it had to pay more for the construction of Patin’s house than would have been the case had plaintiff built it for the price specified in their contract.
“It would seem equitable under all of the facts and circumstances of this case that defendant pay to plaintiff the sum of Seventy-three and no/100 ($73.00) Dollars, and pay the cost of this suit. This will allow to plaintiff Forty-eight and no/100 ($48.00) Dollars, for the amount which he paid to his two brothers, or for three days work by each at Eight and no/100 ($8.00) Dollars, per day, and allow him Twenty-five and no/100 ($25.00) Dollars, for the work which he, himself, did. This because the work which he did was not done merely in the capacity of a carpenter on an hourly basis, but as a contractor who could reasonably anticipate a certain amount of profit in addition to the worth of his labor during the entire period of time normally required to perform his contract.
“I feel that since defendant did not actually tender to plaintiff an amount of money based upon a reasonable estimate of the amount due him, it should pay the costs of this suit.”
For the reasons assigned herein, the judgment of the district court is affirmed.
Appellant is to pay the costs incurred in this Court.
Affirmed.