146 So.2d 710 (1962)
Zelma Hall FUNDERBURK, Plaintiff and Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant and Appellee.
No. 656.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
On Application for Rehearing November 28, 1962.
*712 Ted R. Broyles, Leesville, for plaintiff-appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by Frank M. Coates, Jr., Baton Rouge, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
EN BANC.
HOOD, Judge.
This action was instituted by the widow of Christopher F. Funderburk, deceased, to recover benefits allegedly due her under a policy of group insurance issued by defendant company pursuant to the Federal Employees' Group Life Insurance Act of 1954. Plaintiff claims $5,000.00 under the life insurance provisions of the policy, and the additional sum of $5,000.00 under the accidental death provisions of it. The defendant denies liability on the ground that the decedent was not an insured at the time of his death, and that the accidental death features of the policy had terminated prior to the date of the accident which later resulted in his death. After trial of the case, the trial court rendered judgment in favor of defendant, rejecting all of plaintiff's demands, and plaintiff has appealed from that judgment.
The facts of this case are undisputed, except as to the date on which the decedent was separated from his federal employment. For some time prior to August 28, 1959, the deceased, Mr. Funderburk, was employed as a carpenter by the Department of the Army, Engineer Section, at Fort Polk, Louisiana. His employment was on an hourly basis, and he customarily worked 40 hours per week. More than 30 days prior to August 28, 1959, he was formally notified in writing by the proper authority that he was being separated from his federal employment effective "28 August 1959," and in compliance with that notice he performed his last day of work on that day.
On Sunday, September 27, 1959, or exactly 30 days after his last day of work, Mr. Funderburk was seriously injured in an automobile accident, and on the following Tuesday, September 29, 1959, which was 32 days after he discontinued work, he died as a result of those injuries. He remained unconscious from the time of the accident until the time of his death.
During his employment the decedent was insured under a group policy issued by defendant to United States Civil Service Commission, pursuant to the Federal Employees' Group Life Insurance Act of 1954 (5 U.S. C.A. § 2091 et seq.). The policy provides for the payment of certain benefits upon the death of the insured, and for the payment of additional benefits if death (or dismemberment) occurs by accidental means. Although no beneficiary had been named by the decedent, plaintiff, as his surviving widow, is designated by law as the beneficiary under this policy. 5 U.S.C.A. § 2093. Defendant concedes that the plaintiff would be entitled to recover the amount which she claims under the life insurance provisions of the policy, if the policy was actually in effect at the time of Mr. Funderburk's death, and that she would be entitled to recover the amount claimed under the accidental death features of the policy if the decedent was still covered as an insured under those provisions at the time the accident occurred. Defendant contends, however, that the policy *713 had terminated and that the decedent was not an insured under the appropriate provisions of the policy when either of these events occurred.
The Group Policy on which this claim is based provides:
"Section 3. Cessation of Insurance. The insurance on any employee insured hereunder shall automatically cease, except as specified in the next following paragraph, on the earliest of the following dates:
"(1) The date of his separation from the service. * * *" (Emphasis added).
Section 6 of the policy then provides that any employee whose life insurance shall cease in accordance with the above quoted portion of Section 3 "shall be entitled to have issued to him, without evidence of insurability, an individual policy of Life Insurance only, without disability or accidental means Death Benefits," provided that written application for such individual life insurance policy and payment of the first premium thereon shall be made within 31 days after such cessation. No such application for an individual policy of life insurance was ever made and the required premium was never paid by Mr. Funderburk. The same section of the policy provides further, however, that even though no application for an individual life insurance policy is made, "If an employee dies during the 31 days next following the date of such cessation of his life insurance hereunder," the beneficiary shall be paid "the maximum amount of life insurance for which an individual policy could have been issued."
Defendant contends that the insurance ceased or terminated as to the decedent on August 28, 1959, which was "the date of his separation from the service," and that since his death occurred more than 31 days after such cessation no benefits are due under the life insurance provisions of the policy. Plaintiff contends, however, that August 28, 1959, was not the effective date of Mr. Funderburk's separation from the service, but his separation in fact was effective one or more days later, and accordingly that his death occurred within 31 days following that separation.
Mr. Funderburk received formal written notice on July 21, 1959, of the fact that he would be separated from the service on August 28, 1959. This notice reads, in part, as follows:
"I regret to inform you that your name has been reached for action which requires your separation from the position you now hold. The action necessary is: Separation. The effective date of this action will be 28 August 1959. * * *
"Your position has been abolished."
The decedent then received another letter or notice, containing information which supplemented the notice of July 21, 1959, and which stated that "it is not possible to make you an offer of continued employment," and that the Civilian Personnel Office "will give you information about your final salary checks, lump sum leave payment, and retirement benefits or refunds."
In addition to these formal notices, the decedent also received from the Civilian Personnel Office on or prior to his last day of work copies of two other documents which indicate that his separation from the service was effective August 28, 1959. One of these documents is designated as a notification of personnel action, and shows the nature of the action to be "Reduction-in-Force," and "Effective date of action 8-28-59." The other document is an agency certification of insurance status, and it also shows the date of his separation as "8-28-59."
The testimony of Mrs. Eura H. Williams, who was chief of the Administrative Section of Civilian Personnel at Fort Polk at the time Mr. Funderburk was employed there, and of Mrs. Verna L. Lewis, who was division classifier there at that time, is to the *714 effect that Mr. Funderburk was separated from the service on August 28, 1959. The evidence also shows that the decedent performed no work after August 28, 1959, and he received no pay or compensation for work performed after that date, although he did receive a lump sum payment of accrued annual leave.
All of this constitutes convincing evidence that the decedent was separated from the service on August 28, 1959, as contended by defendant.
Plaintiff, however, to support her contention that the deceased was separated from federal service subsequent to August 28, 1959, introduced two "Payroll Change Slips," which she claims proves that the decedent was on the payroll until sometime after August 28. Neither of these documents show the dates on which they were issued, and it is apparent that they were made and kept for bookkeeping or accounting purposes. The first such slip shows that the decedent received an increase in his hourly rate of pay, effective August 16, 1959, and on that slip the payroll period is shown as "8/29." This slip also shows that a deduction of $1.25 was made from the decedent's salary for that payroll period, indicating that the premium due by the decedent on the group policy involved here was paid up to August 29, 1959. The second payroll change slip obviously was used in computing the amount due decedent for his accrued annual leave, and it shows the payroll period as being "9/12." The same slip, as we interpret it, shows that the decedent was separated pursuant to a reduction-inforce, effective "8/28," and that his accrued annual leave covered the period from "8/29/59 thru 10/12/59."
Plaintiff contends that the first payroll change slip shows that Mr. Funderburk was listed as an employee until August 29, and that the second slip shows that he was carried on the payroll as an employee until September 12, 1959. Accordingly, it is argued that in either case his death occurred within 31 days after he was separated from the service.
It appears from the testimony of Mrs. Eura H. Williams that pay periods for civilian employees always ended on a Saturday, and that the statement of the payroll period on a payroll change slip had no bearing on when the employee actually went off the payroll and was separated from the service. The payroll period, according to her testimony, identified the week during which an employee received some compensation, and she stated that the payroll period in this case would have been identified as "8/29/59" even had the deceased been employed only until the twenty-sixth of the month. The evidence convinces us, as it did the trial judge, that the listing of the payroll period in the payroll change slips as "8/29" and "9/12" was immaterial to a determination of the "date of his separation from the service," and that the documents relied on by plaintiff do not establish that the decedent was carried on the payroll or was listed as an employee after August 28, 1959.
Plaintiff argues further that the fact that a deduction for group life insurance was made on the first payroll change slip, indicating that the insurance premium due by decedent had been paid through August 29, 1959, shows that the insurance was effective until that date and that the 31 day period of extended coverage did not begin to run until that time. The evidence shows, however, that this method of payment of premiums resulted from the accounting procedure used, and that such premiums were arbitrarily deducted from salary payments for each two-week payroll period. There is no logical or legal basis which we have been able to find to support plaintiff's contention that the insurance protection was predicated upon the period for which premiums were paid.
An issue similar to that presented here was considered and resolved by the court in the recent case of Kerlin v. Metropolitan *715 Life Insurance Company, La.App. 2 Cir., 141 So.2d 895. The identical insurance policy and statutory provisions with which we are concerned here were also involved in that case. There, the decedent's last day of work was on October 15, and his death occurred 34 days later, on November 18, 1957. A deduction, however, had been made from the decedent's semi-monthly salary check for insurance premiums for the pay period which ended on October 21, and plaintiff contended that the 31 day period of extended coverage should be computed from the last mentioned date. Our brothers of the Second Circuit held in that case, however, that the termination of the insurance protection was not predicated upon the period of time for which the premium was paid, but that the insurer's obligation under the policy was affected only by the date of the employee's discharge or separation from federal employment. We think the reasons assigned by the court are sound and are applicable to the instant suit.
The payment to the decedent of a sum of money representing his accrued annual leave from August 29, to October 12, 1959, has no significance in determining the date he was separated from the service because the Federal Employees' Group Life Insurance Act of 1954, with reference to lump sum payments for annual accrued leave upon separation from the service, specifically provides that:
"* * * The lump-sum payment herein authorized shall not be regarded, except for purposes of taxation, as salary or compensation and shall not be subject to retirement deductions." 5 U.S.C.A. § 61b.
In our opinion the trial judge correctly held that "Mr. Funderburk was separated from service at Fort Polk on August 28, 1959, and that all requirements of the regulations were met in effecting that separation."
Plaintiff contends, alternatively, that since the decedent sustained an accidental injury within the 31 day period following his separation, and he remained unconscious from the date of that accident until his death, he was physicially unable to exercise his right to convert his insurance into an individual life insurance policy for at least one day before that right of conversion expired. It is argued that the decedent "doubtless would have availed himself of such option if he had been able to do so, particularly after the accident, and that the rights under the insurance contract are heritable." Plaintiff contends that she, as the beneficiary and the surviving widow of the decedent, now has the right to convert the insurance coverage to an individual life policy and to recover under that type of contract. In support of her argument that the right of conversion is heritable, plaintiff relies on Articles 1763, 2028 and 2029 of the LSA-Civil Code.
We think the terms of the insurance contract are clear to the effect that the right of conversion was personal to Mr. Funderburk, and was one which had to be exercised by him, or by some authorized person in his behalf, within the 31 day period allowed by the policy. Assuming, however, that such right was heritable or survived after the death of the insured, an issue which we find unnecessary to consider and which we specifically do not determine in this case, the evidence here shows that the required application to convert was not filed by or in behalf of the decedent within the specified time limit, so under the terms of the policy the right to convert expired one day before Mr. Funderburk's death. There was no such right in existence, therefore, which could have been inherited or acquired by plaintiff upon his death. To allow plaintiff to exercise the right of conversion now would necessitate our writing into the policy a provision which it does not contain, and courts have no authority to write or to make a new contract of insurance for the parties. Green v. National Bellas Hess Life Insurance Company, La. App. 3 Cir., 124 So.2d 397. See also, Crutchfield v. Continental Assurance Company, 336 Ill.App. 411, 84 N.E.2d 333.
*716 We conclude, as did the trial court, that the life insurance coverage under the policy expired or terminated on September 28, 1959, one day before the decedent's death, and accordingly that plaintiff is not entitled to recover the benefits provided under that portion of the insurance contract.
Finally, plaintiff contends that since the decedent was injured in an accident which occurred within the 31 day period of extended coverage, from which injuries he later died, she is entitled to recover under the accidental death provisions of the policy. The defendant resists this claim on the ground that the 31 day extended coverage does not apply to accidental death benefits, and that as to that type of claim the policy terminated on August 28, 1959, the day the decedent was separated from federal employment.
As has already been pointed out, Section 6 of the policy also provides that, "If the employee dies during the 31 days next following the date of such cessation of his life insurance hereunder," the beneficiary shall be entitled to receive "the maximum amount of life insurance for which an individual policy could have been issued." We find no provision in the policy to the effect that the accidental death coverage is extended for the 31 day period.
The Federal Employees' Group Life Insurance Act of 1954 authorizes the United States Civil Service Commission to promulgate such regulations as may be necessary and proper to give effect to the intent, purposes and provisions of that Act. 5 U.S.C.A. § 2100. The Commission, apparently pursuant to that authority, issued a "Life Insurance Manual," relating to the rights of insureds under the Federal Employees' Group Insurance Act of 1954, which manual was received in evidence without objection. It contains the following provision:
"Although an employee's insurance would technically stop on the date indicated above, he nevertheless continues to have life insurance protection (not accidental death and dismemberment) for 31 days thereafter. This 31 day temporary extension is automatic. It is granted to afford the employee an opportunity to convert to an individual policy." (Emphasis added).
These provisions indicate that only the life insurance features of the policy are extended during the 31 day period following the insured's separation from service, and that the accidental death provisions are terminated on the day of such separation. In this case it appears that the accidental death provisions of the policy terminated on August 28, 1959, before the accident in which Mr. Funderburk was involved occurred.
Plaintiff relies, however, upon the provisions of 5 U.S.C.A. § 2095(a), which portion of the Federal Employees' Group Life Insurance Act of 1954 reads as follows:
"Each policy purchased under this chapter shall contain a provision, in terms approved by the Commission, to the effect that any insurance thereunder on any employee shall cease upon his separation from the service or twelve months after discontinuance of his salary payments, whichever first occurs, subject to a provision which shall be contained in the policy for temporary extension of coverage and for conversion to an individual policy of life insurance under conditions approved by the Commission." (Emphasis added). (5 U.S.C.A. § 2095(a).
It is argued that this provision of the Act requires that the policy provide for a temporary extension of all coverage as well as for a right to convert to an individual policy of life insurance. We interpret the phrases "temporary extension of coverage" and "for conversion to an individual policy" as both relating to "life insurance," and accordingly, we think the law does not require that the accidental *717 death features of the policy be extended for 31 days after the insured has been separated from the service. In our opinion, the trial judge correctly held, "that the Federal Employees Group Life Insurance Act of 1954 does not require, and defendant's policy issued thereunder and involved in this suit does not contain, a provision for the temporary extension of coverage, after cessation, for accidental death, and that the accidental death provisions of the policy ceased on the date of Mr. Funderburk's separation from service, August 28, 1959."
For the reasons herein assigned, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing
PER CURIAM.
The opinion in this Court was rendered on November 5, 1962 and deposited in the United States mail the same day.
A return receipt shows that it was received by counsel for plaintiff-appellant on the following day, November 6, 1962. An application for rehearing by the plaintiff-appellant was mailed from Leesville, Louisiana on November 19, 1962 and was received by and filed in this Court on November 20, 1962.
Applications for rehearing must be filed on or before the fourteenth calendar day after, but not including, the date of deposit in the United States mail. Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1961), 8 LSA-R.S. See: Interstate Oil Pipe Line Company v. Friedman, La.App. 3 Cir., 137 So.2d 700; Genovese v. Abernathy, La.App. 3 Cir., 135 So. 2d 802; American Bank & Trust Company v. Phillips, La.App. 3 Cir., 130 So.2d 753; Harper v. Borden Company, La.App. 3 Cir., 129 So.2d 330; Bailey v. Haymon, La.App. 3 Cir., 129 So.2d 203. Under the Uniform Rules, as now permitted by Art. VII, Section 24, LSA-Constitution, the delay for filing the application for rehearing commences on the date of mailing by the Court and not of receipt by counsel. See: Jefferson v. Jefferson et al., La.App. 3 Cir., 145 So.2d 356; Thibodeaux v. Kern, La. App. 3 Cir., 143 So.2d 422; Lewis v. Bell, La.App. 3 Cir., 137 So.2d 706; Robertson v. Great American Indemnity Company, La. App. 3 Cir., 136 So.2d 550; "Proceedings in Appellate Courts", 35 Tulane Law Review 585 (1961). For purposes of considering the timeliness of the application for rehearing, however, the date of filing is the date that such applications are physically delivered into actual custody of this Court, not the date of mailing. Guarisco Construction Company v. Talley, La.App. 3 Cir., 126 So.2d 793; McGee v. Southern Farm Bureau Casualty Insurance Company, La.App. 3 Cir., 125 So.2d 787, certiorari denied.
Our opinion was delivered by deposit in the mail on November 5, 1962, and the fourteenth calendar day thereafter was November 19, 1962. Thus, the application for rehearing was required to be filed in this Court no later than November 19, 1962; so that its filing on November 20, 1962, one day later, is not timely.
For the foregoing reasons, the instant application for rehearing cannot be considered by this Court.
Application not considered.