**Marion A. HEFNER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 1272.**

United States District Court,
E. D. Texas,
Texarkana Division.

July 27, 1971.

William H. Howell, Smith, Stroud, McClerkin & Conway, Texarkana, Ark., for plaintiff.

Thomas S. Arnold, Arnold & Arnold, Texarkana, Ark., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

In this cause of action Plaintiff seeks to recover proceeds under a life insurance policy which the Metropolitan Life Insurance Company issued to the United States Civil Service Commission pursuant to federal statute.[1] The Court has jurisdiction of both the parties and subject matter involved by reason of the fact that complete diversity of citizenship exists, and the amount in controversy exceeds the sum of $10,000.00, exclusive of interests and costs. Both the

---

1. 5 U.S.C. § 8701 et seq.

Plaintiff and the Defendant have filed Motions for Summary Judgment and briefs in support thereof.

There is no dispute as to the facts herein. The policy in question is Defendant's Group Policy No. 17000–G, issued August 29, 1954, which affords eligible government employees with life insurance and insurance for death or dismemberment by accidental means, the amount of said insurance depending upon the annual compensation of the particular employee.

Thomas Francis Hefner, the Plaintiff's deceased husband, became an employee of the Red River Army Depot on May 4, 1967, and he elected to be insured under said group policy. As required by statute, a certificate summarizing the policy benefits was subsequently issued to him by the Civil Service Commission. Under the terms of the policy and the applicable law, Hefner was covered by life insurance in the amount of $10,000.00 and insurance for death or dismemberment by accidental means in an equal amount. There is no question that the coverage extended at least through September 6, 1968, at which time Hefner submitted his resignation, effective the same date.

The employee's portion of the premium for each bi-weekly pay period was deducted from his paycheck at the end of the pay period. The sum of $2.75 was deducted from Hefner's last paycheck dated September 7, 1968, and was in payment of the decedent's portion of the group insurance premium for the two-week pay period ending September 7, 1968.

On September 20, 1968, Thomas Francis Hefner was killed when a tractor he was driving overturned. He died as a result of bodily injuries sustained solely through violent, external and accidental means.

Following Hefner's death, the Plaintiff, being the widow and designated beneficiary under the policy and the applicable law, gave due and proper notice of death and timely filed proper proof of claim with Defendant for payment of the life insurance and the accidental death insurance.

On November 21, 1968, Defendant paid Plaintiff the sum of $10,000.00 as full payment of the life insurance benefits. Liability for accidental death benefits was denied on the grounds that the accidental death insurance coverage terminated on the date that Hefner resigned his employment at the Red River Army Depot. Thus, the sole issue before the Court is whether Plaintiff is entitled to these accidental death benefits, and it must be resolved in light of the policy as written by the Defendant.

Pursuant to statute,[2] Section 3 of the policy provides that "the insurance on any employee insured hereunder shall automatically cease on the date of his separation from the service." In accordance with this statute and regulations of the Civil Service Commission,[3] the policy

---

2. 5 U.S.C. § 8706 reads, in pertinent part, as follows:

"(a) A policy purchased under this chapter shall contain a provision, approved by the Civil Service Commission, to the effect that insurance on an employee stops on his separation from the service or 12 months after discontinuance of his pay, whichever is earlier, subject to a provision for temporary extension of life insurance coverage and for conversion to an individual policy of life insurance under conditions approved by the Commission."

3. 5 C.F.R. § 870.501 reads, in pertinent part, as follows:

"(a) Except as provided in §§ 870.601 and 870.701 the regular insurance of an insured employee stops on the date of his separation from the service, subject to a 31-day extension of regular life insurance coverage."

"(b) The regular insurance of an insured employee who moves without a break in service to a position wherein he is excluded from regular insurance stops on his last day on the roll in the former position, subject to a 31-day extension of regular insurance coverage."

"(e) During the 31-day extension of regular life insurance coverage under

further provides in Section 6 for a period of continued coverage after termination of employment.[4]

Plaintiff contends that under the wording of the policy, the accidental death insurance continued in effect for 31 days following his resignation, or that the wording is at least ambiguous and should be strictly construed against the insurer. To support this contention, Plaintiff relies in large measure upon the wording of Section 5(B), which is the only section dealing specifically with benefits for accidental death.[5] She claims this provision is in conflict with Section 3, in that it clearly states that, for loss of life, the full amount of insurance for death by accidental means shall be paid in an amount equal to insurance in force on account of the employee at the date of cessation if the death occurs after said cessation.

this section a person may, upon application and without medical examination, convert all or any part of his regular life insurance to an individual policy of life insurance at rates applicable to his attained age and class of risk unless, within 3 calendar days after the date his regular insurance stopped, he returns to a position wherein he is not excluded from coverage."

4. This section reads, in pertinent part, as follows:

"*Section* 6. PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF LIFE INSURANCE.—Any Employee whose Life Insurance hereunder shall cease in accordance with any one of items (1), (2), (3), or (4), of the first paragraph of Section 3 hereof, and who shall not, within three calendar days next following the date of such cessation, return to a position in which he is an Employee as defined in Section 1 hereof, shall be entitled to have issued to him without evidence of insurability, an individual policy of life insurance only; without Disability or Accidental Means Death Benefits, subject to the following conditions and provisions:

(A) written application for such individual policy and payment of the first premium thereon shall be made within 31 days after such cessation.
* * *

If the Employee dies during the 31 days next following the date of such cessation of his Life Insurance hereunder, upon receipt of proof of such death and entitlement to payment as specified in subsection (a) of Section 5 hereof the Office shall pay to his Beneficiary of record or otherwise as specified in Section 11 hereof, whether or not written application for such individual policy or payment of the first premium therefor shall have been made, an amount equal to the amount of the Employee's Life Insurance hereunder on the date of such cessation. * * *"

5. Section 5 reads, in pertinent part, as follows:

INSURING CLAUSES.—(A) Life Insurance:—Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any, in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death. Payment shall be made to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof immediately after receipt of such proof and of proof that the claimant is entitled to such payment.

(B) Insurance for Death or Dismemberment by Accidental Means:—Upon receipt by the Office of notice and satisfactory proof, as required herein, that any Employee, while insured hereunder for Insurance for Death or Dismemberment by Accidental Means, shall have sustained bodily injuries solely through violent, external and accidental means, and within ninety days thereafter shall have suffered any of the losses specified in the Schedule of Losses of this subsection (B) as a direct result of such bodily injuries independently of all other causes, the Office shall pay, subject to the terms and limitations hereof, the amount of insurance specified for such loss in said Schedule. * * *

Schedule of Losses

For loss of life, the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the Employee's death, or at the date of cessation of such insurance if his death occurs after such cessation, shall be payable as provided in this subsection (B).

The Court, however, is of the opinion that such construction is not warranted, as the following analysis will show. The policy is consistent throughout in using the term "Life Insurance" to refer to insurance benefits of the type already paid to Plaintiff, while the term "Insurance for Death or Dismemberment by Accidental Means" is used to refer to the type of benefits made the subject matter of this litigation. The term "insurance" refers to both types, unless it is otherwise modified. Similar terminology is found in the statutes authorizing the policy. When viewed in light of this distinction, there is little room to argue that the policy is vague, ambiguous, or conflicting in its provisions.

█ Thus, it is undeniable that *all* insurance terminated upon Thomas Francis Hefner's resignation under the statutory mandate[6] as outlined in Section 3. Section 5(B) affords no coverage after this time, since all of its provisions are limited in application to an employee "while insured hereunder for Insurance for Death or Dismemberment by Accidental Means," and this condition was not met. Therefore, Plaintiff is not entitled to the accidental benefits unless such coverage is contained in Section 6, but this section makes it quite clear that if death occurs during the 31-day conversion period, the only payment due is "an amount equal to the amount of the Employee's Life Insurance" in force on the date of cessation. This payment, which is restricted to the *life insurance* benefit, has already been made.

Furthermore, there is no doubt that there is not any right under the policy or applicable statutes to convert the group policy to an individual policy with accidental death benefits, nor does Plaintiff so contend. To give a former employee who fails to apply for conversion greater benefits than he would have obtained had he applied for conversion would be reading into the policy provisions not contained therein nor intended by the parties. Lowes v. Pan-American Life Ins. Co., 355 F.2d 433 (8th Cir. 1966).

Only one case has been found where the court was faced with the same problem under this policy, and the court there used similar reasoning in reaching the same result. Funderburk v. Metropolitan Life Ins. Co., 146 So.2d 710 (La. Ct.App.1962).

█ It should be noted here that the Plaintiff has objected to the admissiblity of the regulations of the Civil Service Commission and argues that to use them in interpreting the contract has the effect of allowing a federal agency to make a judicial interpretation of a private contract. The Court, however, is of the opinion that said objection is without merit. Congress clearly gave the Commission the authority to promulgate regulations necessary to carry out the purpose of the statute.[7] This was done by the Commission, and it is pursuant to these regulations that the policy was written. Under such circumstances, the Court cannot be said to have improperly delegated its power.

Defendant has also offered in evidence the Federal Personnel Manual, and it will be admitted over Plaintiff's objection. Even though we believe that the foregoing analysis is sufficient to show the policy is not ambiguous, it should also be noted that the Commission made a clear and precise distinction between the regular life insurance and accidental death insurance in the Personnel Manual. In fact, the Manual explicitly covers the precise question now before the Court, providing further support for our conclusion.[8]

---

6. See Note 2.

7. 5 U.S.C. § 8716.

8. FPM Supplement 870–1 contains the following provision, inter alia, at Subchapter S5–1:

"d. Continued protection for 31 days. When regular or optional insurance, or both, terminates, except by waiver or declination, the employee continues to have life insurance protection (not accidental death and dismemberment) for

Plaintiff has presented one other argument in support of her contention that the policy is ambiguous, namely that the wording of the certificate of insurance issued to Hefner is ambiguous in that it "leads the employee to believe that he is an 'insured' during the 31 days following termination of employment." Said certificate will be admitted over Defendant's objections; however, it is apparent from reading the relevant parts of the certificate [9] that the term "while insured" is used each time to refer to the particular type of insurance then under discussion, so there is really no ambiguity. Further, the section in the certificate concerning continued protection after termination [10] refers only to "life insurance," while the certificate as a whole carries forward the distinction between "life insurance" and "accidental death insurance."

Moreover, even if there were some ambiguity in its wording, the certificate itself recites that it is not part of the insurance contract, but merely a summary of the contract provisions. It has, in fact, been held that a similar certificate served only to inform the employee and provide him with evidence of his coverage. Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937). Such a construction is completely compatible with the statutory requirement.[11]

For the reasons set out hereinabove, the Court is of the opinion that Defendant's Motion for Summary Judgment is well taken. Final judgment shall be entered in accordance herewith.

---

31 days thereafter. This 31-day temporary extension is automatic. There is no extension of protection when insurance stops by waiver or declination."

9. The pertinent portion of this section of the certificate provides the following:
"WHEN BENEFITS ARE PAID—
*Payment under the Life Insurance.*— The amount of your life insurance is payable in the event of your death while insured, no matter how caused.
*Payment under the Accidental Death and Dismemberment Insurance.*—Benefits under this type of insurance are payable if, while insured, you receive bodily injuries solely through violent, external and accidental means (other than those noted under Exception), and if as a direct result of the bodily injuries, independently of all other causes, and within 90 days afterwards you lose your life. * * *"

10. The pertinent portion of this section reads as follows:

CONTINUED PROTECTION FOR 31 DAYS—If you should die during the 31 days after the date your insurance coverage stops, a death benefit will be payable under the Group Policy, subject to proof in the usual manner, for an amount equal to the amount of life insurance you had under the Group Policy on the date your insurance stopped, whether or not you had applied for such individual policy or paid the first premium for it.

11. 5 U.S.C. § 8703 reads as follows:
"The Civil Service Commission shall arrange to have each insured employee receive a certificate setting forth the benefits to which he is entitled, to whom the benefits are payable, to whom the claims shall be submitted, and summarizing the provisions of the policy principally affecting him. The certificate is issued instead of the certificate which the insurance company would otherwise be required to issue."