98 So.2d 175

Charleston REED

v.

CALCASIEU PAPER COMPANY, Inc.

No. 43475.

Nov. 12, 1957.

Gist, Murchison & Gist, Alexandria, for defendant-appellant.

Robert F. DeJean, Opelousas, for respondent.

SIMON, Justice.

A writ of certiorari to the Court of Appeal, First Circuit, brings this workmen's compensation case before use for review of a doubt entertained by us, aided by the insistence of defendant through allegations in its application, that the holding of said court contravened established law and jurisprudence. The cause was instituted under LSA–R.S. 23:1221(2) for an injury alleged to have produced permanent total disability to do any work of any reasonable character.

Defendant filed an exception of no cause of action which was maintained by the district court. The court of appeal reversed the judgment of the trial court and the

cause was remanded for trial on the merits, 80 So.2d 588. We do not deem it necessary to inquire into the correctness of the said judgment of the court of appeal for the reason that the issue raised by said exception involves the merits of this controversy which are now before us.

After a trial on the merits the trial judge rendered judgment in favor of the plaintiff, awarding him compensation at the rate of $30 per week during disability for a period not to exceed 400 weeks, subject to credits for compensation payments of $30 per ·week from December 8, 1952, through March 6, 1953, with five percent interest on the past-due payments from their due date until paid, which judgment was affirmed by the Court of Appeal, First Circuit, 93 So.2d 263.

The facts of the case are not seriously disputed and we find them to be as follows:

On December 4, 1952, while in the course of his employment as a common laborer handling heavy pulpwood, plaintiff suffered an injury to his right side, diagnosed by the company physician as a right inguinal hernia. On recommendation of the said surgeon the plaintiff submitted to surgery on December 8, 1952, for an hernioplasty which proved successful. In seeking compensation for total and permanent disability plaintiff alleges as a direct consequence of said surgery the formation of scar tissue along the spermatic cord supporting the right testicle, both of which have almost completely atrophied, a condition termed by the operating surgeon as a "complication."

Compensation payments at the rate of $30 per week were made to plaintiff from the date of his injury until about March 6, 1953, when he was discharged as capable of returning to work. However, he did not resume his employment as a laborer in the pulpwood unloading department of defendant's company, but became employed as a service station attendant, engaged generally in the performance of much easier work than that previously performed. At the time of the trial he was engaged as a car washer for an auto service station.

The record discloses that laborers employed by the defendant in his lumber yard operations are classified in two groups: the "labor crew" and the "labor gang." In all of these operations both groups perform what is generally accepted as heavy or hard manual labor. A distinction, however, was made by the personnel director of defendant when he testified that work performed by the "labor crew" is continuously and regularly hard and heavy, whereas work performed by the "labor gang" is generally somewhat lighter, though spasmodically heavier, than that performed by the "labor crew."

The said personnel director also testified to the fact that had plaintiff returned to defendant's employment he would not have been able to perform the class of

heavy work he had previously performed, but would have been assigned to work other than hard manual labor; that he had knowledge of the fact that plaintiff complained of pain and discomfort and that the company physician had recommended that the plaintiff submit to a second operation to correct the above stated residual disability resulting from the hernioplasty of December 8, 1952.

The record further discloses that plaintiff is and always has been a common manual laborer. He was originally employed in 1950 by the defendant to perform labor in its wood yard. Upon his own request he was transferred from the yard job to that of unloading by hand from railroad cars heavy pulpwood weighing from 40 to 300 pounds, work which was considered the hardest and most strenuous in defendant's operations and which had been regularly performed by plaintiff prior to his hernioplasty. Thereafter he did not return to defendant's employment involving heavy manual labor, but obtained employment as a filling station attendant which entailed far less physical exertion than that required in defendant's employment. He testified that when he performed even this type of lighter work, such as washing cars and performing other duties attendant to the servicing of automobiles, he had substantial pain from the residual disability resulting from the hernioplasty of December 8, 1952. He concedes that the pain is

not so acute and severe so as to cause him "to go to bed" but that the pain is substantial and continuous, requiring the use of mild sedatives.

Plaintiff is a thirty-three year old illiterate person of color with a wife and four children who are dependent upon him for their support and maintenance. He endeavored to discharge his responsibility to them by obtaining this lighter work, earning $30–$35 per week, even though as testified by him he suffered pain in discharging these lighter duties. The veracity of this complaint is corroborated by the testimony of the operator of the service station in which plaintiff was employed for approximately two years that plaintiff, during the beginning of his employment, had complained of severe pain and that thereafter it was obvious that he was enduring pain in the performance of his duties. The defendant attempts to capitalize on the fact that plaintiff's employment as a station attendant was terminated because of dishonesty. It is apparent that the employer attached no serious significance to this act of dishonesty, no criminal complaint having been made in connection therewith; and we deem it immaterial to the issue here presented.

The defendant contends that the evidence does not justify plaintiff's complaint of suffering pain greater than a minor or minimal degree in doing the heaviest types of labor, and that he can do work of reasonable character without suffering sub-

stantial and constant pain, and is therefore not totally and permanently disabled.

■ Our appreciation of the evidence is otherwise. Prior to the hernioplasty plaintiff was capable of performing and did perform for his livelihood heavy manual labor which can be readily described as herculean tasks, lifting and pitching wood pulp of various weights from 40 to 300 pounds. It cannot be disputed that following the hernioplasty he was unable to perform heavy manual labor or similar tasks of a reasonable character in which he was engaged at the time of the injury or that which he customarily did for a livelihood. With this disability plaintiff endeavored to rehabilitate himself and to provide some means of sustenance for his family by seeking employment of a much lighter nature and requiring less physical exertion and, his physical prowess having been greatly reduced, avoiding laborious or strenuous manual labor such as the type of work he was performing at the time of the trial.

■ Whether plaintiff was a skilled laborer or a manual laborer is not the issue in this controversy. In the light of the evidence we think it is obvious that plaintiff, a common laborer, is unable to resume laborious or strenuous manual labor or employment of a reasonably similar nature. Obviously, he is no longer competent to perform duties requiring strenuous physical effort and can no longer compete with other

able-bodied laborers in the securing of employment, and in our opinion he is permanently and totally disabled within the meaning and contemplation of the compensation statute. Neither does our workmen's compensation law demand that a worker perform labor of any nature while enduring substantial pain and suffering resulting from a disabling injury as contemplated by said law.

In the case of Morgan v. American Bitumuls Co. (In re Morgan), 217 La. 968, 47 So.2d 739, 741, we observed:

"Our jurisprudence is settled that the clause 'disability to do work of any reasonable character', as contained in the compensation statute, means disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred. See Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914."

In the case of Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, 3, conscious of the intendment of the compensation statute we held as follows:

"The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially

increase not only the hazards of his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assur. Corp., La.App., 50 So. 2d 87; Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen's Compensation Law and Practice, Sections 272–275."

In the alternative the defendant contends that should this Court find that the trial court and the court of appeal were justified in holding that plaintiff suffers substantial pain when performing reasonable labor, then in that event he is not entitled to compensation for having refused to accept an operation to remedy the cause of his complaint—to probably remove the atrophied cord and teste, or possibly to enlarge the inguinal ring which is constricting the spermatic cord—in view of the medical testimony to the effect that such an operation would possibly relieve the cause and would be accompanied with no danger.

■ Generally, the surrounding circumstances and conditions in each case must be taken into consideration in determining whether or not the refusal to submit to the operation is unreasonable, if not, it cannot bar the employee from further compensation payments. Simmons v. Blair, 194 La. 672, 194 So. 585; Bronson v. Harris Ice Cream Co., Inc., 150 La. 455, 90 So. 759; Crawford v. Tampa Inter-Ocean S. S. Co., Inc., La.App., 155 So. 409.

■ Although the surgeon who performed the hernioplasty testified that in his opinion plaintiff greatly exaggerated his pain, he does admit the "complication" which resulted from the hernioplasty. This surgeon's opinion that the pain suffered by plaintiff could *possibly* be relieved by another operation, which he steadfastly recommends, is sorely lacking in assurance that desirable results would be obtained. With this degree of uncertainty of consequences generating fear in the mind of the defendant, he refused to submit to a second operation and for the further reason that

the first operation which was performed to relieve him of his disability resulting from the injury suffered on December 4, though considered successful, left him with a residual effect and in a condition considered by him as being worse than before the surgery. This plaintiff had undergone major surgery without objection for repair of the hernia. It resulted in his present disability. Under these conditions and circumstances this Court will not require him to again submit himself to major surgery which will probably entail the amputation of his right testicle and a portion of his right spermatic cord and will not deny him compensation for such refusal.

In the second alternative the defendant contends that since the plaintiff herein had never been a skilled laborer, and that since as a common laborer he has been able to be employed for two and a half years before the trial of this suit, performing light and heavy duties around the filling station, he is at most only partially disabled and therefore not entitled to compensation on the basis of permanent and total disability not to exceed 400 weeks, but is only entitled to sixty-five percent of the difference between his wages while working for the filling station and the wages earned by him at the time of his injury for a period not to exceed 300 weeks, subject to credit of compensation paid to him. This contention has been adequately disposed of in view of the conclusions reached by us in this opinion as to plaintff's total and permanent disability.

For the reasons assigned the writ is recalled and vacated and the judgment of the Court of Appeal, First Circuit, is affirmed.

HAMITER and McCALEB, JJ., concur in the decree.