136 So.2d 550 (1961)
W. L. ROBERTSON, Plaintiff and Appellant,
v.
GREAT AMERICAN INDEMNITY COMPANY, Defendant and Appellee.
No. 422.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1961.
On Application for Rehearing January 26, 1962.
Fusilier, Pucheu & Soileau, Ville Platte, for plaintiff-appellant.
Lewis & Lewis, by Seth Lewis, Sr., Opelousas, for defendant-appellee.
Before SAVOY, FRUGE and CULPEPPER, JJ.
*551 CULPEPPER, Judge.
This is a workmen's compensation suit. From an adverse judgment plaintiff has taken this appeal.
On January 30, 1959, plaintiff was working as a plasterer for Tudor Construction Company when the scaffold, on which he was standing, collapsed. Plaintiff fell to the floor and the scaffolding fell on top of him. He received a crushing type injury over the middle portion of his left foot resulting in a fracture of the first metatarsal, as well as the dislocation of all of the metatarsal bones at the metatarsal-tarsal junction lateral.
Plaintiff was initially treated by Dr. Spruill, who applied a cast to the left foot. After a period of about fourteen weeks Dr. Spruill discharged plaintiff as being able to return to work and workmen's compensation payments, which had been paid by the defendant insurer from the date of the accident, were stopped as of May 4, 1959.
Thereafter plaintiff was examined by Dr. George Briel, or his associate, on July 1, 1959, and apparently found to be disabled as of that date. This suit was filed on August 24, 1959, seeking benefits as for total and permanent disability.
On September 26, 1959, plaintiff was examined by defendant's expert witness, Dr. Daniel M. Kingsley, who found swelling, stiffness and pain in the left foot resulting from traumatic arthritis. After trying conservative treatment without success, Dr. Kingsley recommended surgery. By agreement of counsel, compensation payments were brought up to date and the operation was authorized by defendant, insurer. Dr. Kingsley performed surgery on February 11, 1960, fusing the joint involved. On July 1, 1960, Dr. Kingsley discharged plaintiff as being able to return to work.
Plaintiff has received compensation for the period from the date of the injury, January 30, 1959, to August 19, 1960, or a total of $2,835. In addition thereto, medical and hospital expenses totaling $1,114.72 have been paid by the defendant, insurer. The sole issue presented by this appeal is whether plaintiff's disability has continued since August 19, 1960, on which date workmen's compensation payments were stopped.
The plaintiff introduced in evidence the testimony of two expert medical witnesses, Dr. George B. Briel and Dr. George T. Schneider, both of whom are specialists in orthopedic surgery. Dr. Briel examined plaintiff on December 13, 1960, and the essence of his opinion is found in the following portions of his testimony:
"Q. Does that have any significance as far as disability and the ability to work long hours every day? A. Well, indirectly it does. As far as the area of fusion is concerned that apparently except for a mild amount of tenderness which is present there and there is still some swelling, the surgery appears to have corrected the previous disability which he had.
"Q. Which was traumatic arthritis, wasn't it, more or less? A. Yes, but due to the fact these joints have been fused when he comes up on his toes or on the front part of his foot, the anterior arch is pushing down considerably more on the left foot than it is on the right foot and the heads of the metatarsal bones are practically directly on the floor.
"Q. Would that condition cause him to have pain or aches at the end of a work day where he would be working in a stooping position and climbing scaffolding and so forth, Doctor? A. I think anyone who has that much depression of the anterior arches will have a considerable amount of pain after they have put any amount of pressure on the metatarsal joints after any prolonged period of time.

* * * * * *
"I estimated that due to the fact that this type of condition will after *552 a few hours time cause pain that this man could probably work somewhere between four and six hours a day without having too much pain but that he would" "have pain definitely in kneeling and in climbing or working on uneven scaffolds and such as he told me, and I estimated that he could do approximately seventy per cent of his ordinary work as a plasterer without having too much difficulty.

* * * * * *
"Q. In other words, you feel Mr. Robertson is disabled for doing all the types of plastering for a straight eight hour day? A. Yes, I think if he would work eight hours a day on the foot in the condition I found that he would certainly have pain.
"Q. And he would be working a half day with pain? A. Well, he would be working approximately two to four hours with pain.
"Q. Every day? A. I am sure he would."
Plaintiff's witness, Dr. Schneider, examined plaintiff on February 16, 1961. Dr. Schneider's opinion was substantially the same as that of Dr. Briel as is shown by the following from his testimony:
"Q. How long do you think he would have to work in matters of hours or days before he would be compelled to stay without working because of this disability, Doctor? A. I feel that would be entirely dependent on the extent of the strenuous nature of his activity. In other words, if he were involved in a similar type of employment such as that in which he was engaged but one where he would not be subject to a lot of standing where it is possible that he would be able to, say, possibly work in a sitting position depending on the demands of his occupation that he would probably be able to do very well under those circumstances, but by the same token if he had to do climbing and traverse irregular areas and similar situations with prolonged weight bearing I feel he would have a great deal of difficulty in a relatively short time."
The defendant, likewise, introduced the testimony of two specialists in orthopedics. Dr. Daniel M. Kingsley testified that as of the date he discharged plaintiff on July 1, 1960, he was able to return to work as a plasterer on a full time basis. Dr. Kingsley stated that actually the plaintiff had told him on May 31, 1960, that "he had been working regularly and he had practically no complaints" except a "little ache at the end of the day". It was Dr. Kingsley's opinion that plaintiff had lost only 10% of the use of his foot and that he had already demonstrated he could return to work as a plasterer.
Defendant's witness, Dr. William Louis Meulman, who examined plaintiff on January 23, 1961, was of the opinion that although plaintiff had lost from 10% to 15% of the use of his left foot, he could still work as a plasterer for a full eighthour day without experiencing substantial pain. The essence of Dr. Meulman's opinion is found in the following portion of his testimony:
"Q. What is your thought of the pain the man would have at the site of the injury if he would work as a plasterer for eight hours a day? A. At the site of the injury I would be hard put to give much pain element because a good fusion is about the best setup that a man can have. I felt that any pain that he might have would be be more attributable to the depression of the transverse arch, and this is the type of thing that, well, I think probably more of a darn nuisance or annoyance rather than a pain factor.
"Q. Do you think that the ache or the pain he would have would be the nature of a corn, produced by a corn or bunion, something of that nature? A. Yes, sir.

*553 "Q. In other words, it wouldn't be anything that would be too aggravating, a man could live with it easily? A. That's right, sir, that's it exactly."
The plaintiff testified that after his recovery from the operation by Dr. Kingsley, he worked as a plasterer for Mr. Moreau, but that he did so because he had to support his wife and five children. He said he could work only four or five hours a day and then would have to quit because of the pain in his foot. Plaintiff stated that he continued to work for Mr. Moreau, in this manner, until September or October of 1960 at which time he obtained employment with a Mr. Olivier as an estimator of plastering jobs at a salary of $100 per week. As of the date of trial, plaintiff was still working in this capacity for Mr. Olivier. His work as an estimator consisted of preparing estimates, office work and supervisory duties and were not nearly so physically demanding as the actual work of plastering.
Plaintiff testified that even as of the date of trial his foot still swelled and caused pain after prolonged standing or walking. We quote the following portion of his testimony:
"A. Well even today my foot still swells, not every day, I'll be frank with you, now I've got to soak it at night a lot, I mean evenyou see I go around and check these things, and of course I'm on my feet some days quite a bit, you know walk at these offices and stuff like that, and my feet still swell some, but I mean when I get in if it's swelled bad, then my wife has to make up some water and I soak it.
"Q. How often does that happen sir and did that happen at the time that you tried to work as a plasterer, between say July and September of 1960? A. Oh yes, that happened all the time, it's still happening, it hasn't changed much.
"Q. Could you explain to the Court where does the swelling take place when you stand on your feet a lot? A. Well the swelling takes place through thewhat you'd call the arch of the foot here, (witness indicates on his foot), in fact you can see on the shoe there how much wider this one is right now, and this is early morning, and late in the evening my shoe will get wide, I have to loosen my shoe, stuffy, it comes up through here (witness indicates), and this section across my toes here, and especially on this little section here, will swell in there, but the Doctor says that's normal because this has to take the weight of my foot and it's overloaded here.
"Q. Do you have the same motion in your foot that you used to have? A. Oh no, I don't have no flexibility in my foot, I cannot bend my foot."
Plaintiff's lay witnesses, Joseph O. Hand, Clement Lafleur, Mrs. Faye Latour, Mrs. Raburn Ardoin and plaintiff's wife, Mrs. W. L. Robertson, testified that they see the plaintiff frequently and that very often at night after he has returned from work his foot is swollen, that he appears to be in pain, and that he has to soak his foot.
The defendant's lay witness, Mr. Lloyd N. Moreau, a plaster contractor, testified that he had known the plaintiff since 1947 and was actually working with him on the same scaffold when he was hurt. Mr. Moreau stated that following the operation by Dr. Kingsley the plaintiff worked for him regularly as a plasterer and supervisor from about April through August of 1960 earning wages which averaged $150 per week. Mr. Moreau testified that plaintiff always worked a full day and that he never heard him complain of any pain in his foot. However, under cross-examination, Mr. Moreau stated that actually he did not see plaintiff on the job except about two hours on each Friday. Apparently Mr. Moreau relied on plaintiff to supervise one *554 job, leaving Mr. Moreau free to supervise other jobs. However, Mr. Moreau testified that he thought plaintiff actually worked with his tools as a plasterer for four or five hours a day and utilized the rest of his time with scaffolding. Mr. Moreau finally admitted that he actually could not testify whether plaintiff was working in pain because of his limited observation of plaintiff on the job. He stated that he did not know why plaintiff had left his employment.
The jurisprudence of this state is well established that a workmen's compensation claimant will be deemed totally and permanently disabled where he is unable to resume his former employment without enduring substantial pain. See Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175 and the many authorities cited therein. The jurisprudence is also well established, that where an employee, because of economic necessity, is forced to continue at work, in substantial pain, he is nonetheless entitled to be classified as totally and permanently disabled. Wilson v. Fogarty Bros. Transfer Co., La.App., 126 So.2d 6, and the many cases cited therein.
It is the contention of the defendant that plaintiff does not suffer substantial or considerable pain, but that, at the most, plaintiff suffers only an "ache" at the end of a day's work, which is not sufficient to be disabling. Defendant's expert medical witnesses, Dr. Kingsley and Dr. Meulman, testified substantially to this effect. However, the plaintiff's expert medical witnesses, Dr. Briel and Dr. Schneider, testified to the contrary that plaintiff could not work a full eight-hour day as a plasterer without experiencing considerable pain of a disabling nature. In view of this conflict in the medical opinions we shall consider the other evidence. Rogers v. Union Indemnity Co., La.App., 146 So. 505; Taylor v. Marion T. Fannally, Inc., La. App., 36 So.2d 912. Plaintiffs testimony, as well as that of all of his lay witnesses listed above, corroborates the opinion of Dr. Briel and Dr. Schneider. Furthermore, the record shows that plaintiff left a job at which he was earning $150 a week to take a less strenuous job at which he earned only $100 per week. We note also, that even Dr. Meulman thought plaintiff would experience some pain at the end of a full eight hour work day. There is no question but that plaintiff received a serious injury to his foot, and that it is now stiff. Considering the record as a whole, it is our opinion that plaintiff has proved by a clear preponderance of the evidence that the pain which he experiences after working four or five hours as a plasterer is not a "little ache", but is rather substantial pain of a disabling nature.
The lower court, in denying plaintiff recovery, apparently placed great weight on the testimony of defendant's witness, Mr. Moreau, but, as stated above, Mr. Moreau admitted on cross-examination that the plaintiff worked for him from April through August of 1960 as a supervisor, as well as a plasterer, and that actually Mr. Moreau only visited the jobs which plaintiff was supervising for about two hours each week. Mr. Moreau admitted frankly that he did not observe plaintiff at any other time and could not testify whether or not he had worked in pain.
We are not impressed with defendant's argument that plaintiff actually quit working as a plasterer for Mr. Moreau in September of 1960 in order to obtain better employment with Mr. Olivier as an estimator. The evidence shows clearly that in the latter capacity the plaintiff earned a salary of only $100 per week, out of which he had to pay his own travel expense, whereas, as a plasterer, he had been earning an average of $150 per week during the period of time he was working for Mr. Moreau. The plaintiff testified that he had to quit plastering because he couldn't work a full day without substantial pain. His testimony in this regard is substantiated by his expert medical witnesses and his lay witnesses. Under all of the evidence of this case we cannot assume that the plaintiff actually *555 had any other reason for changing jobs.
For the reasons hereinabove set forth, the judgment appealed from is reversed and set aside and it is ordered,' adjudged and decreed that there be judgment herein in favor of the plaintiff and against the defendant for workmen's compensation payments in the sum of $35 per week beginning as of January 30, 1959, and continuing for the duration of plaintiff's disability, not to exceed 400 weeks, together with interest at the rate of 5% per annum from maturity on each such weekly payment from the date due until paid, less a credit for all payments which have been made for the period from January 30, 1959, through August 19, 1960. All court costs, both in the lower court and on appeal, are assessed against the defendant.
Reversed and rendered.

On Application for Rehearing
EN BANC.
PER CURIAM.
The opinion in this court was rendered on December 21, 1961 and deposited in the United States mail the same day.
A return receipt shows that it was received by counsel for the defendant-appellee on December 22nd, the following day. An application for rehearing by the defendant-appellee was mailed from Opelousas on January 4, 1962 and was received by and filed in this court on January 5, 1962.
Applications for rehearing must be filed on or before the fourteenth calendar day after, but not including, the date of deposit in the United States mail. Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1960), 8 LSA-R.S. See: Genovese v. Abernathy, La.App. 3 Cir., 135 So. 2d 802; American Bank & Trust Company v. Phillips, La.App. 3 Cir., 130 So.2d 753; Harper v. Borden Company, La.App. 3 Cir., 129 So.2d 330, 337; Bailey v. Haymon, La. App. 3 Cir., 129 So.2d 203, 205. For purposes of considering the timeliness of the application for rehearing, the date of filing is the date that such applications are physically delivered into actual custody of this court, not the date of mailing. Guarisco Construction Company v. Talley, La.App. 3 Cir., 126 So.2d 793, 797; McGee v. Southern Farm Bureau Cas. Ins. Co., La.App. 3 Cir., 125 So.2d 787, 790, certiorari denied.
Our opinion was deposited in the mail on December 21, 1961, and the fourteenth calendar day thereafter was January 4, 1962. Thus, the application for rehearing was required to be filed in this court no later than January 4; so that its filing on January 5, one day later, is not timely.
Counsel for the defendant-appellee argues, however, that the delay for filing the application for rehearing did not begin to run until the judgment was actually received by him on December 22, 1961. If so, the fourteenth day thereafter being January 5, 1962, the application received by this court on that date was timely filed.
Counsel relies upon decisions such as Reeves v. Department of Highways, 228 La. 653, 83 So.2d 889, holding that in the courts of appeal the delay for rehearing does not commence until receipt (not mailing) of the judgment; and he further relies upon LSA-CCP, Art. 2166, providing that: "* * * in the courts of appeal the delay for applying for a rehearing commences to run the day after notice of the judgment has been given by the court to counsel of record in the case."
Prior to a 1958 amendment, Article VII, Section 24 of the Louisiana Constitution was indeed held to provide that the delay for filing an application for rehearing did not begin to run until notice of judgment was received by counsel. Mid-State Tile Company v. Chaudoir, 228 La. 634, 83 So. 2d 654; Lacaze v. Hardee, 199 La. 566, 6 So.2d 663; Newsom v. Caldwell & McCann, La.App. 1 Cir., 51 So.2d 393. However, the constitutional section's amendment by Act *556 561 of 1958 deleted the provision that "No delay shall run until such notice shall have been given", upon which the holdings in these decisions were based.
Following the 1958 amendment, the sole requirement of Article VII, Section 24 pertaining to the question is that "Notice of all judgments shall be given to counsel of record; and the court shall provide by rule for the giving of such notices." (Italics ours.) LSA-R.S. 13:4446 subd. B, as amended by Act 38 of 1960, provides that, "Applications for rehearing in the courts of appeal must be filed on or before the fourteenth calendar day after notice of judgment has been given, as required by Article VII, Section 24, of the constitution"; the only requirement of which constitutional provision is that the court's rules shall provide that notice be given. And, as stated, the Uniform Rules of the Courts of Appeal provide that the notice is deemed given as of the date of delivery of the opinion by deposit in the U.S. mail. Rule XI, Section 1.
Further, although the wording of LSA-CCP Art. 2166 may afford some support to counsel's argument, nevertheless at the same session of the legislature, LSA-R.S. 13:4446, by Act 38 of 1960 was enacted in its present form, as above quoted, with a deliberately different wording from that of the codal article. Section 5 of Act 15 of 1960, enacting the Louisiana Code of Civil Procedure, specifically provided that nothing in the new code shall be construed to repeal, supersede, or otherwise affect LSA-R.S. 13:4446 as amended or adopted in the 1960 session. Such latter special statute therefore governs in the event its provisions conflict with the codal article relied upon by the defendant-appellee.
As the decisions of this court cited in the second paragraph of this opinion show, the specific intent and effect of the recent amendments of Art. VII, Section 24, Louisiana Constitution, and of LSA-R.S. 13:4446 was to permit the courts of appeal to adopt a rule that notice of the judgment of the court shall be deemed to be given to counsel as of the date the judgment is deposited in the certified or registered mail. This, in fact, is one of the several more noteworthy changes in appellate procedure resulting from the constitutional revision of the appellate procedure resulting from the constitutional revision of the appellate structure of this state and the adoption of the Uniform Rules of the Courts of Appeal of Louisiana. See Proceedings in Appellate Courts, 35 Tulane Law Review 585 (1961).
For the foregoing reasons, the instant application for rehearing cannot be considered by this court.
Application not considered.