180 So.2d 835 (1965)
Birdie J. MOREAU, Plaintiff and Appellee,
v.
EMPLOYERS LIABILITY ASSURANCE CORPORATION, Ltd., Defendant and Appellant.
No. 1549.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1965.
Rehearing Denied December 22, 1965.
Lewis & Lewis, by John M. Shaw, Opelousas, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
*836 HOOD, Judge.
Plaintiff Birdie J. Moreau claims workmen's compensation benefits based on total and permanent disability, together with penalties and attorney's fees. The suit was instituted against his employer's compensation insurer. Judgment was rendered by the trial court awarding plaintiff compensation at the maximum rate for 400 weeks, and condemning defendant to pay penalties and attorney's fees. Defendant appeals.
Plaintiff was injured on April 4, 1964, while working as an automobile mechanic for defendant's insured, Clyde Vidrine International Sales. As he was installing a heavy transmission in an automobile, the transmission slipped and plaintiff endeavored to push or to hold it in an effort to prevent it from falling. Upon exerting himself in that manner, plaintiff immediately experienced pain in his abdomen, and it was later determined that as a result of this accident he sustained a right inguinal hernia and a ventral incisional hernia. The incisional hernia occurred at the site of an old appendectomy scar.
Plaintiff was hospitalized for a few days after the accident occurred, and then surgery was performed for the repair of these two hernias. The evidence establishes, and it is conceded by plaintiff, that the surgery was successful, that both hernias have been repaired and that insofar as these hernias are concerned he is able to perform all of his former duties, including those which require heavy lifting and straining. Plaintiff contends, however, that since this surgery was performed he has experienced a numbness and a burning sensation in the groin which disables him from performing the duties of an automobile mechanic. The principal question presented, therefore, is whether the pain which plaintiff experiences is of such a nature as to render him totally and permanently disabled, within the meaning of the Louisiana Workmen's Compensation Act.
The trial judge found that "the plaintiff is actually attempting to work but not without pain." He further held that "under the jurisprudence a person is considered totally and permanently disabled if he cannot go back to his former employment without suffering pain." We agree with the trial judge in his factual finding that plaintiff experiences some discomfort as he works. We believe, however, that our learned brother of the trial court has erred in his statement of the applicable law.
Under our jurisprudence, a compensation claimant will not be held to be disabled and thus entitled to compensation benefits solely because he suffers some residual pain or discomfort when he attempts to work following a work-connected accident. The residual pain or discomfort in such a circumstance will be considered as being disabling only if it is substantial or appreciable pain. It has been held that when the worker is able to perform his usual duties except that he suffers pain while doing so, he will be held to be disabled within the meaning of the Workmen's Compensation Act only if the pain is "substantial," "appreciable," "considerable," "significant," "great," "true, real pain," "so intense as to hinder the worker's fulfillment of his duties," or "of such a substantial nature that it would be unreasonable and unjust to deny the employee compensation and thus require him to continue to work with that severe pain because economic necessity obliges him to do so" Reed v. Calcasieu Paper Co., Inc., 233 La. 747, 98 So.2d 175; Glidden v. Alexandria Concrete Co., Inc., et al., 242 La. 626, 137 So.2d 894; Williams v. Travelers Insurance Co., La.App. 3 Cir., 157 So.2d 356; Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286; Taylor v. Meeker Sugar Cooperative, Inc., et al., La.App. 3 Cir., 177 So.2d 140; Robertson v. Great American Ind. Co., La. App. 3 Cir., 136 So.2d 550; Bonner v. General Accident Fire & Life Assurance Corp., Ltd., La.App. 1 Cir., 136 So.2d 412; Wilson v. Fogarty Bros. Transfer Co., Inc., et al., La.App. 4 Cir., 126 So.2d 6; Lavergne *837 v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 171 So.2d 751; and Malone, Louisiana Workmen's Compensation Law & Practice, Section 274, page 331.
In the Glidden case, supra, the plaintiff sustained a contact dermatitis or chromate reaction which caused an eczema or rash to break out on his skin when he exerted himself or perspired. Our Supreme Court found that his condition was such that if he engaged in his usual duties of a truck driver, he would break out with this rash and that he would become "quite uncomfortable from itching." Although the case was remanded for additional evidence to determine whether his recovery from the skin ailment might be retarded or whether his health might be impaired if he continued to work, the court nevertheless specifically held that "[t]he described itching plaintiff might suffer should he return to the occupation of truck driver, is not incapacitating to the extent that it can be considered a disability." The court further said:
"It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or `good-as-new' recovery essential before an employer may stop compensation payments. The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker's fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health." (emphasis added)
In Williams v. Travelers Insurance Company, supra, the plaintiff complained of pain in his groin, and the trial court concluded that he was disabled because of this pain. We concluded that the residual pain which plaintiff had was not sufficient to render him disabled, and in so holding, we said:
"* * * A compensation claimant is not entitled to compensation for disability in every instance where there is residual discomfort following an industrial accident: the residual pain must be substantial enough to be disabling within the meaning of our compensation act. * * *" (emphasis added)
Wilson v. Fogarty Bros. Transfer Company, supra, involved a fractured ankle which necessitated a bone graft operation. Thereafter, plaintiff's ankle would swell and pain him when he walked on it, making it necessary for him to soak his ankle regularly in salt water to reduce the swelling and to alleviate the pain. Our brothers of the Fourth Circuit held that in that case the pain was sufficient to warrant classifying plaintiff as being disabled, but in making that determination the court recognized that the pain must be "great" and "considerable" in order to entitle him to be classified as totally disabled. The court said:
"Our conclusion is that, in order that recovery be permitted where the employee continues at work, there must be considerable pain and that the facts of each case must be looked to to determine whether the pain in that case is sufficiently great to justify the award of compensation. * * *" (emphasis added)
And in Parks v. Southern Utility Company of Shreveport, Inc., et al., La.App. 2 Cir., 141 So.2d 67, the court held: "After our review of the record we are convinced that even though plaintiff may have endured some pain of a constant and persistent nature, it was not sufficiently real or disturbing enough to interfere with his occupation, nor did it concern the employee sufficiently to complain to his employers."
With these rules in mind, we now consider the evidence in this case. Plaintiff is fifty-one years of age and has worked regularly *838 for several years as an automobile mechanic. Following the surgical repair of his hernias, plaintiff was released from the hospital on April 22, 1964. He recovered from the operation without incident, and he returned to work for the same employer on June 16, 1964, receiving the same wages but being assigned lighter duties. He was discharged from that employment about two months later, or about the middle of August, his employer stating that the reason why he was discharged was that he was falling behind in his work. This suit was instituted on September 3, 1964.
Defendant paid plaintiff all of the compensation which was due him from the date of the injury until July 5, 1964. It discontinued paying compensation as of this last mentioned date because it learned at or about that time that plaintiff had returned to work for his original employer about three weeks prior to that date.
On September 8, 1964, or about five days after this suit was instituted, while plaintiff was engaged in painting the roof of his home, he lost his balance and fell a distance of about nine feet from the roof to the ground. As a result of this fall he sustained an injury consisting of either a broken or a dislocated arm. The evidence does not show how long he was disabled as a result of this arm injury, but on September 16, his treating physician informed defendant that "until the arm heals, I cannot evaluate the previous illness (hernioplasty)," and plaintiff states that he continued to receive treatment for his arm injury until sometime in December. It is apparent, therefore, that the arm injury, which had no connection with his employment, was of such a nature that it required extended medical treatment, and it may be that it was at least partially because of that injury that plaintiff remained unemployed for more than three months after being discharged by Clyde Vidrine International Sales. The evidence shows, however, that plaintiff's prior condition resulting from the repaired hernias was not aggravated or affected in any way by the fall which occurred in September.
About the first of January, 1965, or shortly after he was last treated for the arm injury, plaintiff was employed as an automobile mechanic by Veillon Motor Company, in Ville Platte, and he has been working continuously since that time in that employment. The shop foreman of this motor company testified that when plaintiff began working for the company he informed the shop foreman that he had been operated on and had a stiff side, and he requested that he be given some help if and when there was heavy lifting to be done. The shop foreman testified, however, that Moreau has been performing his duties as a mechanic satisfactorily, that there has been only one occasion during his employment when it has been necessary for any heavy lifting to be done, and that other mechanics assisted plaintiff at that time, but that mechanics occasionally help each other in those instances anyway. The service manager of the motor company testified that plaintiff has performed his work satisfactorily, that he has never been off work, that he has lifted heavy equipment, and that he has never complained of having any physical disability or of having any trouble performing the duties of his employment.
In connection with the testimony just discussed, we think it is appropriate to note that the evidence shows, and plaintiff concedes, that since the hernias have been repaired he is able to do strenuous work and to lift heavy objects. The injuries which he received in April, 1964, therefore, did not disable him from doing the heavy lifting. The medical evidence also indicates that although plaintiff may experience an increase in discomfort after moving around a great deal, the straining or lifting of heavy objects, in itself, does not produce or increase his pain.
Moreau testified that some time after being discharged from his employment, in August, 1964, and before he was employed by Veillon Motor Company the following *839 January, he endeavored, without success, to obtain employment by T. & H. Well Service at "some job off shore." Since his arm injury disabled him during a part of that time, we assume that he tried to obtain this employment either shortly after he was discharged by Vidrine or shortly before he was hired by his last employer. Also, plaintiff concedes that he "did a good deal of hunting" in the fall of 1964. The fact that he attempted to obtain this offshore employment, that he did a good deal of hunting, and that he undertook to paint his home during that period is somewhat inconsistent with the position which he takes now that the pain which he suffers after moderate activity disables him from performing work of a reasonable character.
Moreau describes the pain which he experiences as "numbness and it burns," or as "just like when you got a big toothache there." He says, "When I move around a lot it bothers me. When I don't, well it don't bother me too much," and, "When I move a lot, exercise myself, * * * that's when it hurts a lot, when I go back home that night the pain, the burning and pain in the side." He also states that when he is not working it bothers him "a little bit but not much."
The hernioplasty which plaintiff underwent was performed by Dr. Ransom K. Vidrine, a general practitioner. The same physician also treated him for the later injury to his arm. Dr. Vidrine testified that in performing the hernioplasty it was necessary to sacrifice some of the peripheral central nerves in that area. He states that occasionally when this is done the severed nerves, ending in the flesh, create a sensitive area, causing pain and a burning sensation. He says this sensitivity sometimes can be corrected by the injection of drugs, but if that does not relieve the symptoms then it can be corrected by opening up the incision again and cutting more of the nerve out. When the nerve is severed, he explains, the area below that point becomes numb, and the area near the nerve ending becomes sensitive.
Dr. Vidrine feels that plaintiff is able to perform heavy manual labor insofar as the hernia is concerned, but he is convinced that plaintiff experiences pain in the area of the nerve endings, and for that reason he concludes that plaintiff is disabled. He explains that "it's like a man working with a toothache," and "you won't feel like working as much as a normal man that doesn't have pain." He states that the pain or discomfort which plaintiff has is not affected by lifting heavy objects, but that it is increased by the amount of moving around he does.
Dr. D. J. Palmintier, a surgeon, examined plaintiff at the request of defendant in October, 1964. He found some numbness and tenderness in the inguinal area, but he states that this often follows the type of surgery which plaintiff underwent, and that ordinarily it resolves itself after a period of several months without any treatment. He feels, however, that even without treatment "it shouldn't cause any physical impairment," and that plaintiff could perform "his regular and customary duties as a mechanic." He does not question plaintiff's complaints that he has an "aching and burning sensation" in the inguinal area, and he agrees with Dr. Vidrine that this probably results from the severing of a nerve when the hernias were repaired. He does not consider this relatively minor discomfort to be disabling, however, and he states further that the discomfort which plaintiff does suffer can be relieved by a very simple treatment, consisting of an injection, and that "this injection relieves the problem permanently." He agrees with Dr. Vidrine that straining or heavy lifting would not make the pain any worse.
We find, as did the trial judge, that plaintiff has experienced some pain in the inguinal area since the hernioplasty was performed, and that this pain or discomfort is increased to some extent as the result of moderate activity such as the performance of manual labor. We are convinced, however, that this pain is in the nature of an *840 aching or burning sensation, of a relatively minor nature, and that it is not substantial, appreciable or great enough to justify classifying plaintiff as being disabled from performing his regular duties as a mechanic. In our opinion plaintiff recovered from his compensable injury and was able to return to his former type of employment by the time the payment of compensation benefits was terminated, in July, 1964. His demands for additional benefits, therefore, must be rejected.
For these reasons, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant and against plaintiff, rejecting plaintiff's demands at his cost. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.
TATE, J., dissents.
TATE, Judge (dissenting).
I respectfully dissent from the majority's reversal of the trial court's award of compensation to this disabled workingman. The claimant is entitled to an award for disability under the well-settled jurisprudence that the mere fact that a workingman returns to work which he is able to perform only with pain does not defeat his right to compensation, for "[t]he law does not expect, and it does not contemplate, that a worker, in order to make a living, should work in pain. [Many citations omitted.]" Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175.
The uncontradicted evidence shows that upon exertion the claimant suffers pain and a burning sensation, and that this is a residual of a nerve injury sustained when the hernias were repaired. Although the claimant had returned to work for approximately six weeks at the time of the trial below, as I read the evidence he earned only about one-half of his wages of before the disabling injury, and without dispute, as the majority states, he sustained pain upon the continued performance of his duties as mechanic. As the claimant testified, he returned to work "because I had to work. In other words, it's either go to work or go hungry." Tr. 126. His previous employer testified that when the claimant returned to work following the injury, he had had to discharge him because he was no longer able to accomplish as much per work-day as he was required to. Tr. 104-105.
The majority nevertheless, despite the conclusion to the contrary of the district court (which, after all, saw and heard the witnesses), concludes that the claimant's pain is of a relatively minor nature and not substantial.
The attending physician, who had performed the operation, stated that because of "such extensive surgery on this man * * we had to sacrifice the nerves", and admitted frankly that in the area of the operation "it remains very sensitive, because the nerve-ending is there in the flesh and it is raw * * * it causes pain and burning." Tr. 94. In describing the pain, the physician stated "it is like a man working with toothache, you don't work with pain, and that keeps a man from working * * *." Tr. 89.
The claimant himself testifies that the pain burns like a toothache, and he further states that because of it he cannot strain or be unduly active. Tr. 130.
While the majority pictures such a burning pain as minor, I personally am unable to say as a matter of law that a pain so described must be so minor as to be insubstantial and nondisabling. In Lavergne v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 171 So.2d 751, 754, we affirmed a trial court's determination that a plaintiff who suffered "true, real pain" in performing his usual labors was entitled to an award for total and permanent disability, even though it was "more of an aching pain than a crippling pain." 171 So.2d 754. We should likewise have here affirmed the trial court's finding of disability in the present case. See also Gates v. Ashy *841 Construction Co., La.App. 3 Cir., 171 So.2d 742, Schram v. Lake Charles Ready-Mix, Inc., 125 So.2d 213.
In fact, essentially the same sort of nerve injury resulting from a hernia operation as is before us now, has been held to be pain substantial enough to be totally disabling in Reed v. Calcasieu Paper Co., La.App. 1 Cir., 93 So.2d 263 (see: "Pain even of moderate degree that is continuous because of the continuous performance of heavy manual labor, is certainly substantial enough to be disabling", 93 So.2d 265, the pain being like a continuous tugging on the bottom part of the claimant's stomach), affirmed 233 La. 747, 98 So.2d 175. See also Sumrall v. J. C. Penney Co., La.App. 1 Cir., 101 So.2d 758, affirmed 239 La. 762, 120 So.2d 67.
In the absence of any evidence that this particular claimant is indeed able to receive relief by injections, I find of little value to our resolution of the issues before us the casual medical dicta that injections may temporarily or sometimes permanently relieve the pain. Further, because an injection of narcotics or other substance may relieve pain temporarily, does not appear to me to be a reason for holding that the claimant is not subject to a work-caused disabling pain, even though the degree of disability might thereby be less and might, for instance, justify an award of partial instead of total permanent disability.
Here, the workman has returned to work earning only a portion of his former earnings. He had been working for only about six weeks at the time of trial. The medical evidence indicates that he suffers pain and burning in an area made very sensitive as a result of his work injury. The trial court found the pain to be substantial and disabling, as indeed I think is corroborated by the medical and lay testimony.
I think the majority plainly committed error both of law and of fact in reversing, in the face of this evidence and this holding by the trier of fact. I believe there is no other case in the Louisiana compensation jurisprudence of the last four decades where a workman with the admitted residual of substantial pain present in this case has been denied compensation for disability. I respectfully dissent from our reversal of the trial court and our dismissal of this disabled workingman's claim for compensation for disability.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., absent.