MILLER, Judge.
Continental Insurance Company appeals the award of total and permanent workmen’s compensation benefits to plaintiff, contending that he was able to return to his employment with defendant’s insured when compensation was terminated May 6, 1968.
At the age of 57 plaintiff was employed to check and place cattle in pens during cattle sales at the Miller and Dominque’s Stockyard in St. Landry Parish. He worked one day a week and the accident occurred on his third day at work. For more than 18 years plaintiff had been farming and still farmed his property except for the one day each week he worked at the cattle sale.
On November 11, 1966 plaintiff and a co-employee were checking cattle to be certain that each purchaser received the animals bought at the sale. One of the animals mashed plaintiff’s left hand against the fence. Plaintiff attempted to continue work but complained of pain and his hand began to swell. Shortly thereafter he was unable to flex the index finger of his left hand. His local physician treated him conservatively for several days then referred him to Dr. Luke Bordelon, orthopedic surgeon of Opelousas.
Dr. Bordelon diagnosed a stenosing teno-synovitis of the flexor tendons of the index finger with entrapment at the level of the metacarpal head and the fibrous os-seous tunnel. He related this to the accident and recommended surgery. Plaintiff was reluctant to submit, but on February 10, 1967, an operation was attempted. This operation was abandoned because of plaintiff’s acute anxiety hysteria while in the operating room.
Dr. Bordelon concluded that plaintiff was “not a good candidate for complete recovery” and that he “would not say that I could help him any with the operation because of the psychological overlay * * Tr. 25. Nevertheless at defendant’s urging, plaintiff returned for surgery (this time under general anesthetic), and on July 12, 1967 Dr. Bordelon explored his hand and released the flexon tendons. Plaintiff did not improve as expected and in February 1968, Dr. Bordelon operated the second time. He “explored the hand to explore the digital nerve and the metacarpal phalangeal joint * * He found adhesions and the joint was completely released.
*824 On April 25, 1968, Dr. Bordelon discharged the patient with the following report :
“The patient had limitations of motion of the metacarpal phalangeal joint and the proximal interphalangeal joint and the distal interphalangeal joint with decreased sensation along the radial side of the index finger and I attributed this to the scarring along the digital branch of the radial nerve. At that time I felt that the patient had reached the maximum medical care and did not believe that any surgical or therapeutic endeavor was indicated in regard to the index finger of the left hand. And I suggested that if the patient was not able to perform any activities that he desired that amputation of the index finger be considered. I estimated the physical impairment of the patient would be 20% of the hand or 15% of the upper extremity or 7i/¿% of the body. I felt that the patient should be able to return to the occupation that he had performed prior to the accident as the maximum impairment of loss of the index finger would not prevent the performance of heavy labor.” Tr. 26, 27. (Emphasis added.)
We note that this opinion was weakened by Dr. Bordelon’s testimony that he did not know that plaintiff’s employment required an almost perfect grip with his left hand. This perfect grip was required so that plaintiff could quickly open and close gates and quickly climb fences to avoid the charge of “mean” cattle.
Because of the lack of wrinkles in the skin, both Doctors that testified were of the opinion that since the operations plaintiff has not regularly flexed his finger. However, there is no restriction because passive movement is obtained without difficulty and on his own, plaintiff can completely close the remaining three fingers to make a fist, and almost close the index finger.
Dr. Bordelon was of the opinion that “the amount of organic difficulty is not that great but you combine that with the psychological overlay or the difficulty with his nerves and you have a situation which can be very serious to the patient. And your attempt at rehabilitating a patient with this type of psychological overlay is usually not successful.” Tr. 28.
It was made clear that this “psychological problem” pre-existed this accident. It may be that it is related to a workmen’s compensation settlement negotiated before the occurrence of this accident. Plaintiff “had a great deal of problems other than the mere organic type injury to the finger and this actually overshadowed the injury to the finger.” Tr. 35. Dr. Bordelon concluded that “If this man had no psychological problem, I believe that this man would have recovered.” Tr.,43.
On redirect, Dr. Bordelon testified that plaintiff cannot make a fist because he cannot physically bend the index finger, and that his complaints are justified when the index finger receives trauma. Tr. 44. Nevertheless, a close reading of his entire testimony leaves us with the settled conviction that plaintiff is voluntarily refusing to flex the index finger of his left hand and that he could return to his employment and to hard manual labor if he wanted to. Any opinion to the contrary is based solely on a “psychological overlay” and no expert in that field has testified.
Dr. Howard K. Karr, Neurosurgeon of New Orleans, examined plaintiff on December 3, 1968 (six days before trial). He found no restriction of the interphalangeal joints of the index finger, and but slight restriction on flexion at the metacarpal phalangeal which he attributed to nonuse. Tr. 62. He found no basis for the pain which plaintiff described. Tr. 67, 71. He estimated plaintiff’s disability at 5% of the hand. Tr. 70.
At Tr. 86 Dr. Karr plainly stated his opinion:
“* * * I further feel that when he becomes no longer preoccupied with *825 some of the legal entanglements of this case, that he will have a good functioning hand.
* 5{c * * * *
“I think the man is doing it (restricting the movement of the index finger) voluntarily. I don’t feel that this has anything to do with his subconscious and really it comes down to a problem on what is the man’s motivation more than anything else.”
Dr. Karr was firm in his opinion that plaintiff could use his hand and that he is capable of performing hard work or common labor. Tr. 69, 70.
At the beginning of the trial, defendant’s counsel objected to the introduction of any evidence relating plaintiff’s alleged disability to any neurosis. Plaintiff’s counsel stated that
“* * * this evidence that tends to prove the plaintiff’s case by traumatic neurosis is not offered to prove the case because that is not at this time what our case is levelled at.” Tr. 107.
The only medical evidence to support the claim is based on the “psychological overlay”. As previously noted, there is no expert testimony in this field.
We distinguish the case of Meche v. Employers Liability Assurance Corporation, 206 So.2d 152 (La.App. 3d Cir. 1968). There it was established that the claimant suffered great pain which interfered with his work. Although plaintiff here complains of great pain while attempting to work, it was established that there is no restriction to movement of plaintiff’s index finger; that the restriction is voluntary '(Dr. Karr) or the result of a “psychological overlay” (Dr. Bordelon). And in Dr. Bordelon’s opinion, except for the psychological overlay, plaintiff would be able to return to work.
It is on this same basis that we distinguish the cases of Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175 (1957); Robertson v. Great American Indemnity Company, 136 So.2d 550 (La.App. 3d Cir. 1961); Wilson v. Fogarty Brothers Transfer Company, 126 So.2d 6 (La.App. 4 Cir. 1961); and Costanzo v. Southern Farm Bureau Casualty Insurance Company, 124 So.2d 621 (La.App. 3d Cir. 1960).
Plaintiff received $2,660 in workmen’s compensation benefits through May 6, 1968 together with $2,056 medical expenses paid. Therefore the percentage of disability of the hand (whether it be 20% [with the “psychological overlay”] as found hy Dr. Bordelon or 5% as found by Dr. Karr) would not entitle plaintiff to additional compensation.
The judgment of the trial court is reversed and set aside. It is ordered, adjudged and decreed that there be judgment in favor of defendant Continental Insurance Company and against plaintiff Patrick Bordelon, rejecting his demands. All court costs, both at trial and on appeal, are assessed against plaintiff.
Reversed and rendered.