CULPEPPER, Judge.
Plaintiff seeks workman’s compensation benefits for total and permanent disability and penalties and attorney’s fees. From an adverse judgment, defendant appealed.
The issues are: (1) disability; (2) penalties and attorney’s fees; and (3) whether plaintiff must submit to further surgery.
The facts show that plaintiff, a 64 year old Negro male, had worked as a laborer in the Sewer Department of the City of DeRidder for many years. On March 13, 1969 plaintiff and a fellow worker, Earl Wallace, were lifting a heavy pump. Plaintiff suffered a severe pain in his groin. Earl Wallace drove plaintiff to the hospital in DeRidder but no doctor was available. Later during the day Dr. Strecker sent plaintiff to the Charity Hospital in Lake Charles. The surgeons there diagnosed an “incarcerated hernia” which they surgically repaired on March 17, 1969.
Plaintiff remained in the Charity Hospital 22 days and was discharged on April 8, 1969. He returned to the surgical clinic of Charity Hospital for post-operative examination on July 23, 1969. This examination revealed the hernia healing normally but as a result of surgery plaintiff had a retracted, swollen and fibrosed right testicle. He was advised to return for follow-up.
On October 22, 1969, plaintiff was again seen in the surgical clinic. The record of this examination showed a mass in the groin which plaintiff refused to have surgically removed. This report also states “plaintiff can return to work. Will follow. Return 3 months.”
Defendant had started paying workman’s compensation benefits as of the date of the accident, March 13, 1969. Mr. Pace, claims adjuster in Lake Charles for the defendant insurer, testified that on October 22, 1969 his secretary telephoned the Charity Hospital and then made the following notation in plaintiff’s file: “Called Charity Hospital. They stated the Chief Surgeon from Lafayette released this man on October 22, 1969. He has a growth but refuses surgery to have it removed.” There is nothing in the file to show that the Chief *541 Surgeon stated plaintiff could return to work. However, the adjuster assumed that since plaintiff was discharged on October 22, 1969 he could return to had manual labor. The adjuster says he also relied on a note from their insurance agent in De-Ridder who stated that plaintiff was able to return to work and requested that compensation payments be stopped. In any event, compensation was terminated on October 23, 1969.
At defendant’s request, plaintiff had been examined on June 30, 1969 by Dr. Robert C. Looney, a physician and surgeon of Lake Charles. The report to defendant of this examination is not in the record. Dr. Looney testified he mailed defendant a written report dated September 4, 1969 in which he diagnosed a “hydrocele or sper-matocele” probably resulting from the surgical repair of the hernia. He also stated that plaintiff was disabled for hard manual labor and that further surgery was necessary to remove the hydrocele or spermato-cele, which is a mass along the cord to the right testicle.
At the request of the defendant insurer, plaintiff was examined on September 23, 1969 by Dr. P. M. Woodard, an associate of Dr. Looney. Dr. Woodard also diagnosed a spermatocele in the right scrotum and recommended surgery .to correct this condition. Dr. Woodard’s report dated October 31, 1969 to the defendant insurer states that plaintiff “did not appear disabled” but it does not say the plaintiff could return to work.
This suit was filed on November 14, 1969 seeking resumption of compensation payments, penalties and attorney’s fees. Defendant filed an answer generally denying all of plaintiff’s allegations and taking the position that it had no further obligation under the workman’s compensation act.
At the request of defendant, plaintiff was examined on January 5, 1970, by Dr. Leonard K. Knapp, a surgeon in Lake Charles. This physician diagnosed a mass in the right scrotum and recommended surgical removal of the right cord and testicle. He expressed the opinion that this condition probably resulted from the hernia repair. Dr. Knapp also stated that plaintiff was disabled for hard manual labor.
On January 27, 1970 defendant received from Dr. Woodard a reply to its inquiry regarding Dr. Woodard’s previous report dated October 31, 1969. In this January 27, 1970 letter, Dr. Woodard states “This patient can work,” but went on to say “if the mass is to be cured, it will have to be removed surgically.” In his testimony at the trial Dr. Woodard explained he did not mean plaintiff could return to hard manual labor. It was his intention to state in the January 27, 1970 letter that plaintiff could return to light work.
The first issue is whether plaintiff was permanently and totally disabled as of the date of the trial on March 10, 1970. We have little difficulty in deciding he was. Dr. Looney, Dr. Woodard and Dr. Knapp all testified to this effect. Defendant’s only argument to the contrary is that plaintiff’s failure to call as witnesses the surgeons who treated him at Charity Hospital gives rise to a presumption that their testimony would be unfavorable. This argument has no merit. The records of the Charity Hospital were filed in evidence by defendant and show what these surgeons did. They repaired the hernia and later discovered the resulting mass which plaintiff declined to have surgically removed. There is no showing that these surgeons saw plaintiff after October 22, 1969. Their testimony could not overcome the positive statements by the other physicians that plaintiff is disabled for hard manual labor by a mass which resulted from the hernia repair.
The next question is penalties and attorney’s fees. Mr. Pace, defendant’s claims representative, testified that he terminated workman’s compensation payments on October 23, 1969 on the basis of the notation in the file by his secretary, follow *542 ing her telephone call to Charity Hospital. This notation, which is quoted in full above, states only that plaintiff was released on October 22, 1969 and that he had a mass, but refused surgery. The notation made by the secretary does not show the surgeons stated that plaintiff was able to return to work. Mr. Pace only assumed this.
Mr. Pace says he also relied on a report from defendant’s agent in DeRidder that plaintiff was able to return to work. However, Mr. Pace admitted in his testimony that he did not usually terminate workman’s compensation payments on the basis of a report from a lay person that medical disability no longer existed.
Defendant argues that Mr. Pace’s assumption, that plaintiff had been discharged by the surgeons at Charity Hospital for return to hard physical labor, is confirmed by the report from the surgical clinic that on October 22, 1969 plaintiff refused surgery to remove the mass and that “plaintiff can return to work.” However, the record shows that this report from the surgical clinic was not received by the defendant insurer until February 25, 1970 which was about 3 months after his suit was filed. In his testimony, Mr. Pace does not contend that workman’s compensation payments were terminated on the basis of this report from the surgical clinic.
Under the circumstances, defendant was arbitrary and capricious. Mr. Pace terminated compensation on the basis of a telephone conversation between his secretary and some unknown person in Charity Hospital that the surgeons had discharged plaintiff with a growth which he refused to have surgically removed, and a report by an agent in DeRidder that plaintiff could work. Defendant’s claims adjuster had no medical reports whatever that plaintiff could return to work. He should have had notice of Dr. Looney’s examination of June 30, 1969 that plaintiff was disabled and needed surgery. Despite the fact that all of this medical information was available, defendant terminated compensation payments and did not resume them before this suit was filed. These actions were clearly arbitrary and capricious. LSA-R.S. 22:658; Sumrall v. J. C. Penney Co., 239 La. 762,120 So.2d 67 (1960).
The final issue is whether plaintiff must submit to surgery to remove the mass from his scrotum. Dr. Looney and Dr. Woodard are of the opinion that this surgery has a 98% chance of success and they say that probably the cord and the testicle will not have to be removed. However, Dr. Knapp estimates the chance of success at only 75% and says that the testicle and cord must be removed.
Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175 (1957) is very similar to the present matter. In that case, plaintiff’s inguinal hernia was surgically repaired but later the spermatic cord and right testicle became atrophied. Surgery was recommended to remove the cord and testicle. The court said:
“This plaintiff had undergone major surgery without objection for repair of the hernia. It resulted in his present disability. Under these conditions and circumstances this Court will not require him to again submit himself to major surgery which will probably entail the amputation of his right testicle and a portion of his right spermatic cord and will not deny him compensation for such refusal.”
The Reed case by our Supreme Court has not been overruled and cannot be distinguished on the facts from the present matter. We consider it controlling.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
Affirmed.